HICKS SHORT *vs.* THE BALTIMORE CITY PASSENGER RAILWAY COMPANY.

*Right to remove Snow from its track by Railway Company— No right to throw the snow in the gutter—Ordinary care and prudence to be exercised in Removing the snow and throwing it on the street—True test of Exemption from Liability in actions for Injury to another's property resulting from the exercise of Rights incident to the dominion and ownership of such property.*

On the 6th January, 1877, there was a heavy fall of snow, and the Baltimore City Passenger Railway Company, in clearing its track running along the bed of Gay street and across Hoffman street, threw the snow into a mass at the intersection of those streets. Near by on Hoffman street, was the house of the plaintiff. On the night of the day mentioned, it rained very hard. and the plaintiff's house was flooded with water. He thereupon brought suit against the Railway Company, alleging that in removing the snow from its track and throwing it into the street, it had obstructed the natural

flow of water, whereby the plaintiff's house was injured. This was denied by the defendant. The verdict and judgment being for the defendant, the plaintiff appealed. HELD:

1st. That the defendant had a right to remove the snow from its track, and in clearing its track and in throwing the snow on the bed of the street adjoining thereto, the defendant did not use the bed of the street in an unusual or unreasonable manner.

2nd. That it had no right to throw the snow in the gutter and thereby obstruct the natural flow of water from the street, because in so doing it would have been guilty of negligence; nor had it a right to bank up the snow on Gay street, so as necessarily to obstruct the natural flow of water. On the contrary, it was obliged to exercise ordinary care and prudence, not only in removing the snow from its track but also in throwing it on the street.

The true test of exemption from liability in actions for injury to another's property resulting from the exercise of rights incident to the dominion and ownership of property, is, whether in the act complained of, the owner has used his property in a reasonable, usual and proper manner, taking care to avoid unnecessary injury to others.

APPEAL from the Superior Court of Baltimore City.

The case is stated in the opinion of the Court.

*Exception*—At the trial the plaintiff offered the following prayer:

If the jury shall believe from the evidence, that the defendant threw the snow from its track on Gay street, across the mouth of Hoffman street, where it intersects Gay, in such a manner and in such quantities as to obstruct the usual flow of the water from Hoffman street, and that by reason of said obstruction the water on Hoffman street overflowed the gutter and footway, and flooded the premises of the plaintiff, then the jury are instructed that the plaintiff is entitled to recover such damage as he has sustained by reason of such overflow.

And the defendant offered the three prayers following:

1. That if the jury shall find that the defendant exercised ordinary care in the management of its tracks on Gay street, and removal of the snow therefrom, and cleaning out the gutter extending along Gay street, at the side of its track, and that the damage suffered by the plaintiff was attributable either to the conformation of the ground and situation of his premises, or to a storm of such extraordinary severity that the usual drainage provided by the city would not carry the water off, then their verdict should be for the defendant.

2. That if the jury find that the damage suffered by the plaintiff was caused by the condition of the gutter or foot pavement on Hoffman street, at the north side of the house standing between Gay street and the property of the plaintiff, then their verdict should be for the defendant.

3. That the defendant was under no obligation to clean out the gutters on either the north or south sides of Hoffman street, running east and west, and under the ordinances of the city it was the duty of the police officers to cause the snow and ice to be removed from the flagstones at the intersection of Hoffman and Gay streets, to remove the ice and other obstructions to the free passage of the water at the intersection of the said streets, and to cause to be removed any ice and snow on the foot pavement in front of the house at the south-east corner of said streets, which the jury may find that the owner of said house had neglected to have removed; and if the jury shall find that the injury complained of by the plaintiff in this action, was caused by the failure or omission of the police to discharge properly said duty, then their verdict must be for the defendant.

The plaintiff filed special exceptions to defendant's prayers as follows:

1. Because there is no evidence that the damage to the plaintiff was caused by a storm of extraordinary violence, or by the conformation of the ground as assumed in defendant's first prayer.

2.  Because  there  was  no  evidence  from  which  the  jury
could  infer  that  the  damage  was  caused  by  the  condition
of  the  footway  and  gutter  of  Reaney's  house,  on  the
corner,  as  assumed  in  defendant's  second  prayer.

3.  Because  there  was  no  evidence  to  show  that  it  was
the  duty  of  the  police  to  keep  the  intersections  of  the
streets  clear,  &c.,  as  stated  in  defendant's  third  prayer,
and  because  there  was  no  evidence  of  any  failure  or  omis-
sion  of  the  police  to  discharge  said  duty,  or  that  the  plain-
tiff's  damage  was  caused  thereby,  as  assumed  in  said  third
prayer.

The  Court  (DOBBIN,  J.,)  granted  the  plaintiff's  prayer  in
connection  with  such  qualification  as  might  be  found  in
the  defendant's  prayers  which  it  granted.    The  plaintiff
excepted.    The  verdict  and judgment  being  for  the  defend-
ant,  the  plaintiff  appealed.

The  cause  was  argued  before  BARTOL,  C.  J.,  STEWART,
BRENT,  GRASON,  MILLER,  ALVEY  and  ROBINSON,  J.

*J.  T.  Mason, R.,* for  the  appellant.

The  foundation  of  this  action  is  not  negligence.
Negligence  is  not  the  gravamen  of  the  offence.    An  act
may  be  perfectly  lawful  in  itself,  and  performed  with  the
utmost  care  and  caution,  but  if  damage  thereby  accrue  to
the  property  of  another,  from  that  moment  it  becomes
unlawful.

Moreover,  in  this  case  the  defendant  was  making  an
extraordinary  use  of  a  public  street  for  its  own  private
emolument;  and  if  thereby  it  injured  any  one  else,  no
amount  of  care  or  diligence  could  exonerate  it.    Even  if
the  damage  be  the  necessary  and  inevitable  result  of  the
act,  the  defendant  must  answer  for  it  in  damages.

The  question,  in  actions  of  this  sort,  is  not  whether  the
defendant  has  acted  with  due  care,  but  whether  his  acts
have  occasioned  the  damage  complained  of.    If  the  acts

Short *vs.* The Baltimore City Passenger Railway Co.

complained of were done by the appellee, or by his agents or servants, in the course of their employment, they were unlawful invasions of the appellant's rights, and it matters not that they were done without negligence. *Lawson vs. Price*, 45 *Md.*, 135; *Scott vs. Bay*, 3 *Md.*, 445; *Balto. and Pot. R. R. Co. vs. Reaney*, 42 *Md.*, 130, &c.; *Chapman vs. Thames Mfg. Co.*, 13 *Conn.*, 272; *Bonomi vs. Backhouse*, *Ell. Bl. & Ell.*, 652; *Addison on Torts*, 5.

The act of the appellee in obstructing the street was unlawful, and as the loss has actually happened whilst its wrongful act was in force, it will not be allowed to apportion or qualify its own wrong.

Conceding, for the argument, that the conformation of the ground or the severity of the storm might have damaged the appellant, this is not sufficient to discharge the appellee. To entitle it to exemption, it must show not only that the same loss might have happened, but that it *must* have happened if the act complained of had not been done. *Davis vs. Garrett*, 6 *Bing.*, 716; *Scott vs. Shepherd*, 3 *Wilson*, 403; *Vandenburg vs. Truax*, 4 *Denio*, 464; *Powell vs. Salisburg*, 2 *Young & Jervis*, 391; *Balto. & Pot. R. R. Co. vs. Reaney*, 42 *Md.*, 138.

The appellee's first prayer was vicious, because it left out of view the fact (which was not contradicted) that the servants of the appellee obstructed the mouth of Hoffman street, and instructs the jury that if the appellee used due diligence in keeping the Gay street gutter open, and that the damage was the result of the conformation of the ground and the severity of the storm, the plaintiff could not recover.

This was, in effect, an instruction that the severity of the storm and the conformation of the ground were the proximate causes of the damage, and the appellee's act too remote; which was clearly bad law. *Balto. & Pot. R. R. vs. Reaney*, 42 *Md.*, 133.

The appellee's second and third prayers are obnoxious to the same objection, in that they ignore the wrongful act

of the appellee in obstructing the street, and treat the facts mentioned in those prayers as the proximate cause of the damage. *Addison on Torts,* 5; 3 *Parsons on Contracts,* 179, 180; 1 *Hilliard on Torts,* 94, 95; *Annapolis & Elk Ridge R. R. vs. Gantt,* 39 *Md.,* 143.

There was no evidence to support the hypothesis in the appellee's first prayer, that the storm was of such extraordinary severity that the usual drainage provided by the city would not carry the water off; nor that the damage was attributable to the conformation of the ground and the situation of the premises.

The evidence on this point was that there was a good grade on Hoffman street, and the water always ran off with ease; and the City Commissioner (one of appellee's own witnesses,) said if the mouth of Hoffman street had not been obstructed, the water would have passed off.

There was no evidence to support the hypothesis of the second prayer of the appellee.

There was no evidence to support the hypothesis of the appellee's third prayer, that the condition of the flagstones, &c., at the corner, and the failure of the police to perform their duty, caused the damage. The only evidence as to the flagstones was that they were cleaned off; and such being the case, the jury could not have found otherwise. *Balto. & Pot. R. R. Co. vs. Reaney,* 42 *Md.,* 138.

The evidence also was that the servants of the defendant placed the obstructions at the intersection of the streets, late in the afternoon, and completed their work about dark; and certainly the appellee could not claim exemption because the police did not come in the night and remove them.

The appellant's prayer correctly stated the law, and should have been granted without qualification. The appellee having been guilty of a wrongful act in obstructing the street, was answerable for any damage which thereby accrued to the appellant, for all the consequences

which might have been foreseen; and can only exonerate itself by showing that the loss *must necessarily* have happened if the act complained of had not been done, of which there was no evidence. And the doctrine of negligence has no application to this case. *Lawson vs. Price,* 45 *Md.,* 135; *Balto. & Pot. R. R. vs. Reaney,* 42 *Md.,* 138.

*Arthur W. Machen,* for the appellee.

The City Code (of 1869,) was in evidence, sec. 157, on page 884.

The plaintiff's prayer was granted, and it put his case before the jury more favorably than he was entitled to have it. And there was no error in granting either of the defendant's prayers.

The use of the street by the horse railway company was a lawful use of the highway as a highway, and not the imposition of any new easement. *Peddicord vs. Balt., Catonsville and Ellicott's Mills Passenger Railway Co.,* 34 *Md.,* 463; *Commonwealth vs. Temple,* 14 *Gray,* 69; *Elliott vs. Fair Haven R. R. Co.,* 32 *Conn.,* 579; 1 *Redf. on Railways,* 318.

In making this use of the bed of the street, in exercise of its franchise, the defendant was bound for ordinary care, but exercising such care, could not be held to a greater degree of responsibility, any more than a person making use of the highway as a highway, but in some other mode, is bound to do more than exercise reasonable care. What is sufficient care in any case, depends, of course, upon the circumstances of that case. The removal of the snow from the track being necessary, in order to enable the defendant to use it for the public benefit and convenience, the case is, essentially, not different from that where a person having lawful occasion to cross a street which has been encumbered by a fall of snow, opens a way for his passage through the snow drift. More may be required to be done by the railway company than by the

individual traveller, but the nature of the obligation is the same—being to exercise that amount of care which may reasonably be expected from such a person under all the circumstancés of the case.

The class of cases relied on by the appellant's counsel—cases of injury resulting to a land-owner by an altera-tion of the natural condition of the adjacent soil, by its owner or occupier, and falling under the maxim, *sic utere tuo ut alienum non laedas,* have no application here. This is the case of the lawful use of the surface of a street, as a street, and the defendant was responsible only for the exercise of due care. *Mayor & C. C. vs. Marriott,* 9 *Md.,* 175, 176; *Flynn vs. Canton,* 40 *Md.,* 319; *Tyson vs. Co. Comm'rs,* 28 *Md.,* 510; *Ann. & E. Ridge R. R. Co. vs. Gantt,* 39 *Md.,* 143; *P. W. & B. R. R. Co. vs. Constable,* 39 *Md.,* 159; *Sharp vs. Powell, L. R.* 7, *C. P.,* 253; 41 *Law Journ., C. P.,* 95; *Rylands vs. Fletcher, L. R.,* 3 *Eng. and Irish Appeals,* 339, 340.

ROBINSON, J., delivered the opinion of the Court.

The appellant is the owner of a house in the city of Baltimore, on Hoffman street, near its intersection with Gay; and the appellee is the owner of a horse railway, running along the bed of Gay street, and across Hoffman.

On the 6th January, 1877, there was a heavy fall of snow, and in clearing its track, it is alleged the appellee threw the snow off towards the curb, making a ridge or bank on Gay street, and across the mouth of Hoffman, thereby obstructing the natural flow of water at the inter-section of the two streets.

On the other hand, the appellee proved that the snow which had been pushed off the track by the snow-plow, lay between the track and the gutter, and did not obstruct nor in any manner interfere with the natural flow of water from Hoffman street.

On the night of the day in question, it rained very hard, and the appellant's house was flooded with water,

and this suit is brought to recover damages for the injuries thereby sustained.

At the trial below, the appellant asked the Court to instruct the jury: that if they should find the appellee obstructed the natural flow of water from Hoffman street, and that by reason of said obstruction the house of the appellant was flooded with water, he was entitled to recover damages for the injuries thereby sustained.

This instruction the Court granted, subject however, to the following modification:

"That if the jury should find the appellee exercised ordinary care in the management of its track on Gay street, and removal of the snow therefrom, and clearing out the gutter extending along Gay street at the side of its track, and that the damage suffered by the plaintiff was attributable either to the conformation of the ground and situation of his premises, or to a storm of such extraordinary severity that the usual drainage provided by the city would not carry the water off, then their verdict should be for the defendant."

The appellant contends that he was entitled to the instruction as offered by him, and that the Court erred in granting it with the qualification.

Assuming then that the snow thrown on the street by the appellee in clearing off its track, obstructed the natural flow of water from the street; and that in consequence thereof the appellant's house was injured, the broad question is presented, whether he is entitled to recover damages irrespective of the question of negligence on the part of the railway company?

As a general rule, it is conceded that every one must so use his own property and exercise the rights incident thereto, in such a manner as not to injure the property of another. And it is equally true, that the *mere lawfulness of the act* is not in itself a test in all cases, of exemption from liability for injuries resulting therefrom to the prop-

erty of others.    But yet, there are certain rights incident
to the dominion and ownership of property, in the exercise
and enjoyment of which a person will not be liable for
damages, although injury may be occasioned thereby to
the property of another.

The books are full of cases of this kind, and it is un-
necessary to cite them here.    The question then is, what
is the true test in actions of this kind, by which the
*exemption from liability is to be determined?*    We think it
may be safely said, both on principle and on authority, that
the true test is, whether in the act complained of, the
owner has used his property in *a reasonable, usual and
proper manner*, taking care to avoid unnecessary injury to
others.

This is the rule laid down by the House of Lords, in
the recent case of *Rylands vs. Fletcher*, 3 *English and Irish
Appeals*, 330.    There the defendant built a reservoir for
the purpose of keeping and storing water, and the weight
of the water broke through some old disused mining pass-
ages and works, and injured the mine of the plaintiff.

The Court of Exchequer, BRAMWELL, B., dissenting, were
of opinion that the plaintiff was not entitled to recover,
but on appeal to the Exchequer Chamber, this judgment
was reversed, and on appeal to the House of Lords, the
judgment of the Exchequer Chamber was affirmed.

The LORD CHANCELLOR said: " The defendants, treating
them as the owners or occupiers of the close in which the
reservoir was constructed, might lawfully have used that
close for any purpose for which it might in the ordinary
course of the enjoyment of land be used; and if in what
I may term the natural user of that land, there had been
any accumulation of water either on the surface of the
ground, or under ground, and if by the operation of the
laws of nature that accumulation of water had passed off
into the close occupied by the plaintiff, the plaintiff could
not have complained that that result had taken place."

Short *vs.* The Baltimore City Passenger Railway Co.

" On the other hand, if the defendants not stopping at the natural use of their close, had desired to use it for any purpose which I may term a *non-natural* use, for the purpose of introducing into the close that which in its natural condition was not in or upon it, for the purpose of introducing water either above or below ground in quantities and in a manner not the result of any work or operation on or under the land,—and if in consequence of their doing so,. or in consequence of any imperfection in the mode of their doing so, the water came to escape and to pass off into the close of the plaintiff, then it appears to me, that which the defendants were doing, they were doing at their own peril."

The right of the plaintiffs to maintain their action, was based entirely upon the ground that the defendants had used their land in an unusual, or in the language of the Lord CHANCELLOR in a " non-natural " manner, but the right to use it for any purpose for which it might, in the ordinary course of the enjoyment of land be used, was distinctly asserted.

Now in this case the appellee was entitled under its charter and the Ordinances of the City of Baltimore, to the use of the bed of the street for the purposes of a horse railway, and if its track was obstructed by snow, it had beyond all question the right to remove it. And the only question is whether in clearing its track and in throwing the snow on the bed of the street adjoining thereto, it can be said, that the appellee was, under the circumstances, using the bed of the street in an *unusual or unreasonable manner*. We think not. The removal of the snow from its track being necessary in order to enable the company to use it for the public benefit and convenience, it was obliged either to throw it on the bed of the street or to haul it away, and no one will pretend that it was under any obligation to do the latter. It had no right of course to throw the snow in the gutter, and

thereby obstruct the natural flow of water from the street, because in so doing the appellee would have been guilty of negligence. Nor are we to be understood as deciding that the Railway Company had the right to bank up the snow on Gay street, so as to necessarily obstruct the natural flow of water. On the contrary, it was obliged to *exercise ordinary care and prudence,* not only in *removing the snow from its track,* but also in *throwing it on the street.* And this question was distinctly left to the jury by the modification of the plaintiff's prayer.

Nor do we agree with the appellant, that the evidence was legally insufficient to prove either that the storm was one of unusual severity, or that the flooding of the plaintiff's house was owing to the peculiar conformation of the ground.

On the contrary, the appellant's own witness, *Martinet,* says, "it was a dreadful night, slush and snow ankle deep—one of the worst nights he ever knew."

Then as to the peculiar conformation of the ground, the proof shows, that the first story of the plaintiff's house, is several feet below the level of the street, and there was evidence tending to show that it was liable to be flooded from several directions, namely, through Reaney's house on the west, and then from the rear of the house by the water coming down the hill-side south of Hoffman street, and lastly by the overflow of the front side-walk, caused by the choking up of the Hoffman street gutter.

The several instructions granted by the Court presented, we think, the law of the case fairly to the jury, and the judgment below must therefore be affirmed.

*Judgment affirmed.*

(Decided 25th July, 1878.)

ALVEY, J., filed the following dissenting opinion:

I cannot assent to the opinion that has been filed in this case. As I apprehend the principles applicable to the

Short *vs.* The Baltimore City Passenger Railway Co.

case, a very different result should be produced from that produced by the opinion of the majority of the Court.

I think the prayer offered by the plaintiff should have been granted, without the qualification such as the Superior Court attached to it; and that there was error in granting the first prayer offered by the defendant.

Whether the defendant was guilty of negligence in displacing the snow from its railroad track, was not at all, in my judgment, the material question in the case; but the material question was whether, by displacing the snow from the road track, the defendant had, as the natural and proximate consequence of that act, produced injury to the plaintiff.

It is true the defendant holds a franchise from the State, to maintain and operate a passenger railroad in the streets of the city, the full enjoyment of which no one disputes; but that franchise should be so used as to avoid injury to the property of the citizen as far as possible; and if by removing the snow from the road track and placing it as it did, injury was produced, as the natural and proximate consequence of the act, liability attached, without reference to the question whether the defendant was guilty of negligence in simply displacing the snow from the road track, and throwing it to the one side or the other. When it was once established that the injury complained of resulted from the disposition of the snow removed from the road track, and from no other cause, and that the injury would not have ensued but from the manner of disposing of the snow removed from the track, a cause of action was established upon which the plaintiff was entitled to maintain his action. This I take to be a plain proposition, and one that is well established both upon principle and authority. Indeed it is but the logical sequence of the fundamental maxim, that every one shall so use his own property as not to injure that of another. The question whether the act of removing the snow from

the track was in itself lawful, is far from being the test of liability for the consequences of the act; for, as stated by Mr. Addison in his work on Torts, page 9, "There are many cases in which an act is perfectly lawful in itself, and will continue to be so, until damage has been done to the property or person ·of another; but from the moment such damage arises the act becomes unlawful, and an action is maintainable for the injury." Here, while it is fully conceded that it was lawful for the defendant to clear its road track of the snow, it is clear, I think, that it may still be liable for the consequences resulting from the heaping the snow across the mouth of an intersecting street, so as to obstruct the ordinary drains of the street, and to cause the water to flow upon an adjoining property to the injury of its owner. If such disposition of the snow be not a nuisance, I have altogether mistaken the definition of that offence as against private right.

In 3 *Blackstone's Com.*, 217, it is said, "if one erects a smelting-house for lead so near the land of another, that the vapour and smoke kill his corn and grass, and damage his cattle therein, this is held to be a nuisance. And by consequence it follows, that if one does any other act, *in itself lawful*, which yet being done in that place necessarily tends to the damage of another's property, it is a nuisance; for it is incumbent on him to find some other place to do that act, where it will be less offensive. So also if my neighbour ought to scour a ditch, and does not, whereby my land is overflowed, this is an actionable nuisance." And so in this case, though the defendant had a right to remove the snow from its road track, it was incumbent upon it to have deposited the snow in some other place than it did, or to have avoided heaping the snow in a manner that would interfere with or obstruct the natural and ordinary drainage of the street; and its failure so to do rendered it liable for the consequences, upon the familiar principle that a party should always

bear the natural consequences of his act, and not require them to be borne by another. It is therefore no answer for the defendant to say that it did not contemplate the injury to the plaintiff's property, and that it was guilty of no negligence in simply removing the snow from the road track; nor is it any answer to say that the freshet was more than an ordinary one; if it be true that the damage complained of would not have occurred but for the banking of the snow across the mouth of Hoffman street by the defendant's servants. The defendant was bound to contemplate and to guard against not only the ordinary accumulations of water, but the probable occurrence of more than the merely ordinary freshets; as such are frequent in the course of nature, and within human knowledge and experience. Indeed, upon the theory that the defendant can only be held liable for the consequences of its actual negligence, it was bound to take such precaution. *Bailey vs. Mayor*, 2 *Denio*, 433. But, as I have said, negligence is not the gravamen of this action, nor the foundation of the plaintiff's right to recover. See case of *Shipley vs. Fifty Associates*, 106 *Mass.*, 194.

In the case of *Rylands vs. Fletcher*, L. Rep., 3 *Ho. L.*, 330, an action of a kindred nature to the present, and where the whole subject was most thoroughly considered, Lord CRANWORTH said that "in considering whether a defendant is liable for damages which the plaintiff may have sustained, the question, in general, is not whether the defendant has acted with due care, but whether his acts have occasioned the damage. This is all well explained in the case of *Lambert vs. Bessey*, reported by Sir T. Raymond, and the doctrine is founded in good sense. For where one person in managing his own affairs, causes, however innocently, damage to another, it is obviously only just that he should be the party to suffer. He is bound *sic utere tuo ut non laedas alienum.*" This I take to be an established principle, and one properly applicable to this case.

The distinction taken by Lord Chancellor CAIRNS, in the case just referred to, between a natural and a non-natural use of land, if it can be taken to mean anything more than the difference between a reasonable use and an unreasonable use, with respect to the rights of others, is hardly a practicable test of the application of the maxim *sic utere tuo ut alienum non laedas;* and I do not find that it is at all supported by authority. On the contrary, the principle of the maxim is quite differently, and, as it would appear, more correctly, explained by Mr. Justice BLACKBURN, in *Williams vs. Groncott,* 4 *B. & S.,* 195, where he says: "Looking to the general rule of law that a man is bound so to use his own property as not to injure his neighbour, it seems to me that where a party *alters* things from their normal condition *so as to render them dangerous to already acquired rights,* the law casts upon him the obligation of guarding the danger, in order that it shall not be injurious to those rights." Here, as I have said, it was not the simple fact of removing the snow from the road track that gave rise to the injury, but it was the banking the snow along the street, that caused the water to flow upon the premises of the plaintiff, according to the hypothesis of his prayer; and assuming that to be the real cause of the injury, it resulted not from the normal but the changed or altered condition of the snow, and the failure of the defendant to guard against the possibility of the snow in that condition, and in that place, producing injury to the adjoining property owners. And in such case, the result of the act is the test of liability; and I can perceive no more propriety in making that liability to depend upon a question of negligence to be passed upon by the jury, as to the manner of using the road track, or the removal of the snow therefrom, as put in the defendant's first prayer, than there would be in making the liability of a defendant in an ordinary action for an assault and battery, or trespass to land, to depend upon a question of

negligence by the defendant in the commission of the wrong alleged.

That the defendant was clothed with franchises from the State can certainly make no manner of difference as to the question of its liability, Its franchises, whatever they may be, must be taken to be held in subordination to the prior rights of property of the citizen; and it cannot for a moment be tolerated that it can claim exemption from liability, under circumstances where an individual would incur liability in the use of his property, simply because of the fact that it holds and is in the enjoyment of franchises from the State; or that the principle of its responsibility is in any manner modified or changed by reason of such franchises. Being in the enjoyment of an extraordinary privilege, for its own profit, there is no principle that requires the rights and property of the citizen to be subordinated to it; and so it has been held by many decided cases, among which are the following: *Hay vs. Cohoes Co.*, 2 *N. Y.*, 159; *St. Peter vs. Dennison*, 58 *N. Y.*, 416; *Wilson vs. City of New Bedford*, 108 *Mass.*, 261. These cases, in principle, strongly support the views that I have stated in the foregoing opinion.

I think the judgment should be reversed and a new trial ordered.