BRADLEY K. PURDUM ET AL. *v.* MALCOLM EDWARDS ET AL.

[No. 56, January Term, 1928.]

*Decided April 13th, 1928.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Benjamin Kann,* for Bradley K. Purdum and Hamilton Real Estate Company, appellants.

*Edward Gernand Wright,* for C. Edgar Wood and Orange Home, Inc., appellants.

*Vernon Cook,* with whom was *Floyd J. Kintner* on the brief, for the appellees.

PARKE, J., delivered the opinion of the Court.

Malcolm Edwards and Augusta Edwards, his wife, appellees, brought an action for deceit against Bradley K. Purdum, the Hamilton Real Estate Company, Inc., C. Edgar Wood, and the Orange Home, Inc., the appellants, and recovered against the four appellants a judgment of $1,526.75. The suit was tried on the general issue plea in tort, and this appeal presents for review fifty-four exceptions on the evidence, and one on the court's rulings on the prayers.

By their prayers demurring to the evidence the appellants raised the question of the right of the appellees to recover a judgment against the appellants or any one of them. The briefs of the appellants make this their chief contention, and it will now be considered.

C. Edgar Wood, one of the appellants, while engaged in the development of real estate in Baltimore and its suburbs, bought in April, 1925, a tract of land containing about twelve hundred acres and located in Sumter County, Florida, for the purpose of subdivision and development for residential purposes. In furtherance of his plan he organized a corporation called the Orange Home, Inc., under the laws of the State of Florida, and caused a survey to be made of the property, and about one hundred and ten or twenty acres, desig-

nated as Section C, were selected as the portion of the tract best adapted for immediate exploitation and conveyed by Wood to his corporation. Wood was the president of the Orange Home, Inc., and owned at the time of the transaction involved in this case ninety-seven *per centum* of all its outstanding capital stock, and Edward G. Cole, P. G. Futch, and E. Green, who each held one share of stock, whose par value was one hundred dollars a share, were the holders of the remaining shares. Futch was the attorney and resident agent of the corporation, and Cole was its vice-president and in charge of the selling operations in Florida, and Green in Baltimore, while Wood covered both places and was the executive head and had general control and management of all the corporate affairs.

Section C was divided by built and projected streets into blocks, which were sub-divided into lots, and the usual preparatory steps in the laying out of streets, the construction of sidewalks, and the development of the property for sale were undertaken. Under the direction of Wood plats were made, and the disposition and development of the lots began at a time to take advantage of the prevailing speculation in Florida land. The corporation employed salesmen to market the property, and constituted the Hamilton Real Estate Company as its agent to sell the lots in Block U of Section C.

The Hamilton Real Estate Company was a corporation whose principal office was in Baltimore. Bradley K. Purdum was its president and in charge of its business. He and Malcolm Edwards had long known each other in business and social relations, and Edwards had great confidence in Purdum and placed implicit reliance upon his word. On Saturday, October 3rd, 1925, Malcolm Edwards went to the office of the Hamilton Real Estate Company to see his son, who was there employed, and Bradley K. Purdum called the appellee into the back office to talk to him about the Florida property. The evidence on the part of the appellees tended to prove that Purdum described the favorable location of Orange Home, its present and prospective advantages, and the general reasons why a purchase of one of the lots would

be profitable. Purdum then exhibited a plat of the development, which represented it as situated on the shores of Lake Okahumpka, and traversed by the Dixie Highway. The property was shown laid off in blocks and lots and divided by wide thoroughfares, with a driveway of one hundred feet in width skirting the lake. Purdum stated that the driveway had not been completed, and some filling on its low places would be done by dredging the sand from the lake, and that the water front lots were the most desirable. The driveway passed between these lots and the beach of the lake front, and, in the course of the negotiations, Edwards told Purdum he did not want to buy anything under water, and thereupon he was assured by Purdum that he had been over every inch of the Orange Home development, and knew the lots indicated on the plat and then under consideration, and that they were high and dry and that the lot now in controversy was all right. Upon these representations and in reliance upon Purdum's assurances, Edwards, who had never been in Florida and whose sole source of information were the representations then made by agent and plat, bought for himself and wife one of these lots for $4,100; paid one-third in cash to the order of Hamilton Real Estate Company; and, on October 12th, 1925, he and his wife executed a mortgage of the lot to the Orange Home, Inc., to secure the payment of two promissory notes in equal amounts that were given for the residue of the purchase price and payable at one and two years from date. At the time of the sale, Edwards listed the lot bought with the Orange Home, Inc., for resale at $6,500, as Edwards was informed by Purdum before he bought that the lot would be sold for that amount before the credit payments would become due on the mortgage notes.

Several months after the sale, Edwards became uneasy because he had not received his deed and had heard rumors affecting the financial position of the Orange Home, Inc., so he sent his attorney to Florida in March, 1926, to investigate and report. As a result of this action, the appellees learned for the first time that their lot was then, and at the time of the sale, unfit for any purpose, since it was covered by the

waters of Lake Okahumpka to the depth of from two to six feet, and that his venture was a complete loss. When confronted with these facts, Purdum disclaimed knowledge, and agreed to refund the money paid, if the lot were under water, and telegraphed on March 16th, 1926, to the Orange Home, Inc., that, if the report were true, he would recommend that the contract of sale be rescinded. But the money was not refunded, and, Purdum not being willing to have a conference in reference to the matter if attorneys were present, the appellees brought an action of deceit against the four appellants. The contract was not rescinded by mutual consent or by judgment, and so, since it did not affirmatively appear that the appellees had definitely exercised their election to rescind before the institution of these proceedings, their action of deceit is not barred. *Bower on Actionable Misrepresentation*, sec. 217, p. 211; *Adams v. Anderson*, 4 H. & J. 558; *Weaver v. Shriver*, 79 Md. 530, 543. See *Bolton Mines Co. v. Stokes*, 82 Md. 50.

While the proof on the part of the appellants is to the effect that the lot sold was not covered by water, yet they admit that it was low and soggy and that the lots fronting the lake would have to be filled in before they could be used. In fact, the defense is that Purdum informed Edwards of this situation, and of the plan to pump the sand out of the shallow part of the lake on the low lying adjacent lots, so that, with one operation, the lake would be deepened in order to provide sufficient water for boats to land at the shore line and the lots would be filled so as to become suitable for building purposes.

It follows that the defense ascribed to Purdum and his company a knowledge of the physical condition of the lot that rendered it impossible for the representation, which the evidence of the appellees tended to prove, to have been other than false and fraudulent when made, because the misrepresentation was either known by the representor to be false, or was made by the representor with such reckless ignorance of or indifference to truth as to show non-belief and so to be equivalent to the representor's guilty knowledge. And since

this false and fraudulent representation was one of existing fact, made to the appellees by Purdum, the agent, in the course, and within the scope, and for the purpose, of the business of the Hamilton Real Estate Company, Inc., his principal, in a material matter, and, being made with that object, induced the appellees to alter their position to their damage, the appellees were clearly entitled to recover in tort against Purdum and his company as joint tort-feasors. *McAleer v. Horsey*, 35 Md. 439; *Buschman v. Codd*, 52 Md. 202; *Robertson v. Parks*, 76 Md. 118; *Cahill v. Applegarth*, 98 Md. 493; *Donnelly v. Baltimore Trust Co.*, 102 Md. 1; *Boulden v. Stilwell*, 100 Md. 543, 551, 552; *Reynolds v. Evans*, 123 Md. 365, 372; *Gittings v. Van Dorn*, 136 Md. 10, 15; *Schnader v. Brooks*, 150 Md. 56; *Jones v. Sherwood Distilling Co.*, 150 Md. 24; *Lamm v. Port Deposit*, 49 Md. 233, 241; *Pollock on Torts* (8th ed.), 303-307; 2 *Mechem on Agency* (2nd ed.), secs. 1995, 1996.

The Orange Home, Inc., would be likewise bound by the acts of the Hamilton Real Estate Company, Inc., as its agent to offer and sell the lots in Block U, because the principal was engaged in the business of selling its lots, which were located in a distant state from the place of the agency and about which, in a treaty of sale, the buyer would have to inquire and obtain his information from the agent, who would, therefore, have the implied authority to give it on request, since the principal had placed the agent in a position in which he would appear to have the authority to give information about the subject matter of the sale. The evidence, however, shows that the Hamilton Real Estate Company, through its president, was, for the purpose of procuring buyers, fully advised by its principal of the plans for the development of the project, and of the various features affecting the desirability of the lots for purchase. In addition to this, Purdum had visited the premises in Florida before the sale, and had observed the physical features of Section C, and the water front lots had been pointed out at the time of his inspection by the Orange Home, Inc., through its representative on the ground. And while Purdum, as presi-

dent of the Hamilton Real Estate Company, was in a sense a subagent of the Orange Home, Inc., the ultimate principal, yet the evidence is that the Orange Home, Inc., dealt directly with Purdum, recognized his authority to act for it in the matter of the agency and treated with him as having equal authority with the Hamilton Real Estate Agency, for which the Orange Home, Inc., knew he would act in the matter of sales. Under these proved circumstances, and because of them, the Orange Home, Inc., becomes responsible as representor for any fraudulent representation made by either Purdum or the Hamilton Real Estate Agency within the scope of the latter's agency; and, if all of the appellants concurred in making the fraudulent misrepresentation, they may be held jointly and severally responsible. *Supra,* and *De Bussche v. Alt* (1878), 8 Ch. D. 286, C. A. at pp. 310, 311; *Cargill v. Bower* (1878), 10 Ch. D. 502, 513, 514; *Barwick v. English Joint Stock Bank* (1867), L. R. 2 Exch. 259, 265.

As has been seen, the testimony on the part of the appellees, if believed, supports the theory that the fraudulent representation made by Purdum was the representation of the Hamilton Real Estate Company, the agent of the Orange Home, Inc., and so made the last named party responsible in tort, since the false representation was made by the agent in the course of its employment, within the scope of its employment, and for the purpose of the business of the Orange Home, Inc. The fraud of the agent is the fraud of the principal, and the design and purpose of the agent in the knowingly false statement is the design and purpose of the principal, since in law the principal and agent are one and identical when the agent, as here, acts within that relation. It remains, therefore, to see how C. Edgar Wood became a joint tort feasor by concurrence in the fraud alleged.

There is evidence in the record from which it may be found that Wood, the president of the Orange Home, Inc., was not only its executive officer but also in full control of its affairs. He was familiar with the tract dedicated to

the enterprise; employed the engineer who laid it out, and made the survey and the plats of his work; and it was Wood who knew that the plats portrayed the lake as girdled by a driveway upon which lots in Block U were depicted as lying with this driveway of one hundred feet in width between them and the lake, and he approved and issued these plats to the agents of his company in Maryland, in order to sell these lots as thus represented and platted, when Wood knew, if the appellees' proof is believed, that these lake front lots were the bottom of the lake, under from two to five feet of water or, if his own version be accepted, they were low and soggy and unsuitable for building purposes until filled in and raised by artificial means, and not, even in his own judgment, worth the price asked and paid by the appellees until so improved. In addition, according to his own testimony, it was necessary, under the laws of Flordia, for the plat, with an attestation of the engineer who had done the work, and his certificate as to what lots delineated on the plat were so staked on the ground, to be recorded in Sumter County, before a valid deed could be given conveying a parcel of land by reference to a plat. Notwithstanding this fact, Wood permitted to be sent to the Hamilton Real Estate Company plats from which sales were to be made, when he knew that lots shown thereon were not staked; and, after the sale to the appellees of lot 9 of Block U, Section C, he, as president of the Orange Home, Inc., executed a deed, which he knew to be invalid and could not be recorded, to the appellees; and accepted for his company their payment of one-third of the purchase money and their notes and mortgage deed for the residue.

As stated by Judge Cooley in his work on Torts (3rd Ed.), page 213, "When several participate, they may do so in different ways, at different times, and in very unequal proportions. One may plan, another may procure the men to execute, others may be the actual instruments in accomplishing the mischief, but the legal blame will rest upon all as joint actors." If the jury believed the testimony offered by the appellees to the effect that the lot was sold from a

plat representing the lot to be on the lake front when it was in fact under water, then the act of Wood, in sending out for the purposes of sale the plats depicting this lot and the other lake front sites as being outside of the shore lines of the lake and fronting on an intervening driveway one hundred feet in width encircling the lake, was a fraudulent misrepresentation of the physical condition of the lots, which under the circumstances, fairly charge him, as well as his subservient corporation, with intending and concurring in the fraudulent misrepresentation of the agent. If the plats had not showed a fictitious shore line and pictured residential lots, where there was a lake, the agent would not have been able to sell from the plats water as a building lot, possessing the advantages of a frontage on a driveway about a lake. The fraud perpetrated upon the appellees had its inception in the act of Wood, and, on the appellee's theory of the evidence, the jury could have found he concurred in the tort which the appellees complained, since he had done something to produce the fraudulent result. *Cargill v. Bowen*, L. R. 10 Ch. Div. 502, 513-516; *Cooley on Torts* (3rd Ed.), pp. 198-206; 223-229; 243-253; 2 *Machen on Corp.*, sec. 1643.

It should be observed that the appellants offered proof which tended to show that the entire situation as it actually existed was disclosed to the appellees at the time of the purchase and that no fraud was perpetrated. But conflict of evidence is not a matter for the court; and a demurrer by the appellants to the evidence is, for that purpose, a concession that all of the proof favorable to the right of action must be accepted as true by the court in passing upon the propriety of submitting the case to the jury. This admission requires the court to ignore the rebuttal evidence, which, therefore, is not stated in the discussion of the demurrer.

It follows from the preceding discussion that there was legally sufficient evidence of the intentional participation by the four appellants in the deceit practiced, so as to make them all jointly and severally liable to the appellees. The prayers of the appellants withdrawing the case from the

jury as to each of the several appellants were properly rejected.

In all thirty-five prayers were offered and of these sixteen were granted, some with modifications; and the trial judge drew one of his own motion. No serious objection has been advanced against the action of the court on the prayers which were not demurrers to the evidence. These prayers fairly and adequately presented to the consideration of the jury the issues involved, and no reversible error in the court's action has been found.

The appellants have brought up for review fifty-four exceptions to the rulings on evidence. Of these only nine are mentioned on the briefs of appellants. If the remaining exceptions were so trivial as not to justify notice by appellants, they should have been dropped from the record in framing the exceptions or explicitly waived in the presentation of the case. As it is, the court has examined every one of the exceptions, and where it finds error there was no injury. Eight of the nine exceptions mentioned in appellants' brief are to the admission of evidence showing that a recreation pier and certain improvements which were contemplated had not been completed, although the Orange Home, Inc., had hung in its office a picture showing the development with recreation pier and improvements, and had authorized the printing and distribution of circulars representing certain of these features as existent. A wide latitude is allowed in cases of fraud for the purpose of reflecting upon the guilty or innocent intent of the party in committing the act charged; but even if it be conceded that the evidence admitted were too remote or immaterial, it is difficult to see how any injury resulted, in view of other evidence of the same nature before the jury, and of the action of the trial court in granting instructions carefully advising the jury of the nature of this testimony and its limited use in the jury's deliberations.

The final exception mentioned in one of the briefs of appellants is the fifty-first which, with the fifty-second, was to a question asking of the appellant Purdum if he did not know a real estate agent assumes some responsibility in undertaking

to sell lots and for what he says. This was an improper question, but the intelligent and frank answer of the witness made the error harmless. And, finally, the record does not present in a form for review the propriety of a comment made by Mr. Cook in the course of his argument before the jury.

Finding no reversible error, the judgment below will be affirmed.

*Judgment affirmed, with costs.*