HARRIETT N. ARMIGER *v.* BALTIMORE TRANSIT COMPANY, ET AL.
[No. 79, October Term, 1937.]

418

*Decided January 13th, 1938.*

The cause was argued before Bond, C. J., Urner, Offutt, Parke, Sloan, Mitchell, and Johnson, JJ.

*Edward H. Burke* and *Willis R. Jones,* for the appellant.

*James J. Lindsay*, with whom was *Philip S. Ball* on the brief, for the Baltimore Transit Company, appellee.

*J. F. H. Gorsuch, Jr.*, with whom was *Edwin W. Wells* on the brief, for J. Carroll Monmonier, appellee.

MITCHELL, J., delivered the opinion of the Court.

The suit in this case was instituted by Harriett N. Armiger, an infant, through Daniel N. Armiger, her father and next friend, for injuries received by her while returning from a visit to Martinsburg, West Virginia, on December 29th, 1935, as a guest in an automobile operated by C. Albert Hodges, Jr., which collided with an automobile owned and operated by Dr. J. Carroll Monmonier. Miss Armiger, at the time of the collision, was eighteen years of age, and Mr. Hodges seventeen. The scene of the impact was on the Frederick Road, in or near Catonsville, Maryland, at a point about seventy-five feet east of the intersection of Frederick Road and Beechwood Avenue. The general course of Frederick Road is east and west; and, at the time of the accident, the automobile in which the plaintiff was traveling was being driven in an easterly direction, and the course of the Monmonier car was directed westerly. Frederick Road is east and west; and, at the time of the accident, with concrete shoulders; the width of the road, including the shoulders, being at least twenty-two feet. Located north of the highway and parallel therewith, are double street car tracks of the Baltimore Transit Company, a body corporate; and the southern rail of these tracks is approximately five feet distant from the edge of the north shoulder of Frederick Road.

Mr. Holmes testified that, accompanied by Miss Armiger, he left Martinsburg at not later than 12:30 p. m., and had traveled a distance of approximately ninety-two miles towards Baltimore at the time of the accident, which occurred at about 3:30 p. m.; that, at the outset of their journey, it began to snow and continued to do so; that snow was falling fast at the time

of the collision; that the driver's side of the windshield was equipped with a wiper and defroster which enabled him to see ahead; that, when approximately 300 feet in its rear, he noticed a trolley car sweeper proceeding in the same direction in which he was traveling, and, when 150 feet to the rear of the sweeper, he could see that it was throwing a snow spray entirely across Frederick Road; he was then proceeding at the rate of twenty-five miles an hour; that, at the scene of the accident, snow-plows had cleared the highway, leaving a clear width of about seventeen feet for vehicular travel; and that he was driving on his extreme right of the cleared space. The witness further testified that he could not see through the line of spray ahead of him; that, immediately prior to entering it, he took his foot off of the accelerator and proceeded to pass through it, and that "at that moment there was a crash." At the time he entered the curtain of spray it was higher than the top of his car and "it was so thick that when I found myself within the spray it was as if a complete blanket surrounded me." He did not see the Monmonier car at any time before the crash, and after it his own car came to a stop approximately in the center of the highway.

Miss Armiger testified that it was snowing and that there was no windshield wiper or defroster on her side of the car. For this reason she could not see through the windshield or in front; but she could see out of the side window to her right, and that the car was being driven to the driver's extreme right, because it was close to the banked snow on her right, as cleared by the snow-plows. She did not see the street car sweeper or observe the curtain of snow, nor did she see the automobile of Dr. Monmonier at any time. "Q. You have heard Albert Hodges' testimony. Did you know you were running into a spray of snow from this sweeper? A. No, I did not see it. My side of the windshield was closed in with snow. I could not see ahead through the snow on the windshield." Finally, when asked to tell what she knew about the accident, Miss Armiger stated that they were

driving on Frederick Road when all of a sudden there was a stop and she was thrown against the windshield and was rendered unconscious.

Dr. Monmonier and the Baltimore Transit Company are the joint defendants in the case; and, testifying in his own behalf, the doctor stated that he saw the sweeper approaching him at least two squares distant; that the spray represented a curtain of snow extending completely across Frederick Road, and was high enough to obliterate all view of any traffic coming towards him. This condition continued down to the instant of the collision. He had intended to make a right-hand turn into Beechwood Avenue, which would have caused him to cross the street car tracks, but, because of the density of the spray, he decided not to reach the intersection and cross ahead of the sweeper; to the contrary, he slowed down to a practical standstill as the best method of receiving the spray as the sweeper passed him. At that time he was on his extreme right of the highway and only three or four feet from the southern street car rail. He did not see the Hodges car at the time of impact, but his automobile, after it was struck head-on, was "shunted" around and in front of the snow sweeper, and also struck by the sweeper. His car came to a stop on the west-bound street car track and was then facing east.

David Lee Ford, an employee of the corporate defendant, was called by the plaintiff, and testified that, at the time of the accident, he was a member of the crew of the snow sweeper, acting in the capacity of "plowman"; that the plow is a blade about sixty-five inches long which scrapes along the track but does not throw snow; that it is operated by a separate control from that which operates the brooms; the latter are run by a motor operated by a "shopman" stationed inside of the sweeper, and the speed of the sweeper does not control that of the brooms; the brooms are circular in form, and are located, respectively, under the front and rear of the sweeper; they are set at an angle; the front broom trans-

fers the snow towards the outside rail, and the rear brush throws it from the tracks. Aprons are provided for each broom, to keep the snow from being thrown out too far. The witness further stated that the method of operating was to cut down the speed of the broom when within about ten feet of an approaching automobile, so as to decrease the spray emerging from the sweeper. He further explained that the motorman or plowman usually signaled the operator of the brooms when to cut down the speed of the latter because of the approach of other vehicles, and that at times the operator of the brooms could not determine the sweep of the snow and its effect upon vehicles in the highway, by reason of snow on the front windows of the sweeper. With the brooms revolving at half speed, the maximum distance to which the spray would be thrown would be five or six feet.

At the conclusion of the plaintiff's case the corporate defendant offered three prayers. Two of these, one a demurrer to the evidence, and another based upon the theory of contributory negligence on the part of the plaintiff, were not acted upon by the trial court. The third prayer, which sought an instruction that there was no legally sufficient evidence to show that any negligence on the part of the Baltimore Transit Company was the proximate cause of the accident, was granted; as was also the first and only prayer of the defendant Monmonier, which instructed the jury that there was no evidence legally sufficient to entitle the plaintiff to recover against the latter defendant.

Three exceptions are found in the record, two of which relate to rulings on evidence, and the third to the court's ruling on the prayers.

The two exceptions as to rulings on evidence will be considered together, as they both relate to the propriety of cross-examining the same witness upon practically the same subject, in the following respect: (a) The witness Ford, in his examination in chief, was permitted to describe in detail the mechanical features of the snow

sweeper, and to state that his instructions were to cut down the speed of the broom, so as to reduce the spray emerging from the sweeper, upon approaching an automobile within approximately ten feet. He also added that the motorman generally gave the shopman a signal and the latter cut the motor out on the brooms. On cross-examination he was asked if immediately before the accident in controversy he did cut the brooms down, and his reply was that "we did." (b) The witness then testified on cross-examination, without objection, that, while operating the plow on the occasion of the accident, he observed the automobile of Dr. Monmonier approaching the sweeper. He was then asked: "Now, on this Sunday afternoon, did you comply with all those instructions"; and, over objection, permitted to answer, "we did." It is contended by the appellant, the plaintiff below, that the trial court erred in permitting the witness to testify, on cross-examination, as to whether his instructions were followed at the time of the accident, the witness not having been asked on direct examination to give any testimony concerning the particular accident for which the suit was brought.

In this country, under ordinary circumstances, cross-examination can only relate to the facts and incidents connected with matters stated in the direct examination of the witness, and it is generally held that, if a party desires to examine a witness as to other matters, he must do so by making the witness his own. This rule, however, has its qualifications, and much must be left to the discretion of the trial court in the determination of the question. In 3 *Jones on Evidence,* sec. 821, it is said: "One of the objects of cross-examination is to elicit the truth of transactions only partly explained, and the rule limiting the inquiry to the general facts stated in direct examination, must not be so construed as to defeat the real object of cross-examination." After citing numerous cases, the author then concludes that: "Unless a trial court should so far overstep the bounds as to admit that in cross-examination which clearly has

no connection with the direct testimony, an appellate court would not be justified in reversing a judgment for such cause, especially where the cross-examination is upon facts competent to be proved under the issues in the case." Under the facts of the instant case, we cannot say that the trial judge abused the discretion committed to him in ruling upon the evidence as detailed herein. The witness, of course, could have been called as a witness for the defense, but the subject matter of the cross-examination was relevant to the matter which had been inquired into on direct examination, and, in our opinion, the lower court was justified in its rulings. *Black v. First Nat. Bank of Westminster*, 96 Md. 399, 54 A. 88; *Mut. Fire Ins. Co. v. Ritter*, 113 Md. 163, 77 A. 388; *Lockhart v. State*, 145 Md. 602, 125 A. 829; 2 *Poe's Pl. & Pr.*, sec. 275.

Turning now to the third exception, and dealing first with the granted prayer of the corporate defendant, it is apparent that the question of remote and proximate cause, as applied to the facts in the instant case, is not easy of solution. Street railways are public utilities which serve a large portion of the inhabitants of the communities in which they operate; and that they have the right to keep their tracks clear of snow is conceded. In point of fact, the safety and convenience of the public demand that this be done. But in compliance with this demand, it does not follow that such utilities may disregard the rights of others. The law imposes upon them the duty of exercising ordinary care and prudence in their operations, and the question whether they have used such ordinary care and prudence in a given case should be decided upon common sense principles, in the light of the surrounding facts and circumstances. *Short v. Balto. City Passenger Rwy. Co.*, 50 Md. 73; *Pennsylvania Steel Co. v. Wilkinson*, 107 Md. 574, 69 A. 412.

It should be borne in mind that the plaintiff in the case before us was a guest, and not the driver of the automobile in which she was traveling at the time of her injury, and that the uncontradicted testimony is to

the effect that at that time the Hodges car was proceeding at not more than twenty-five miles an hour. According to her testimony, the car in which she was riding was on the driver's extreme right of the highway, and she was not in a position to observe the snow sweeper or the snow coming from it, either immediately before or at the time of the accident, for reasons which she clearly detailed and which a jury might determine to be logical.

In the recent case of *Hess v. Loftus,* 173 Md. 284, 195 A. 556, 558, in which a guest in one car sued both the owner and driver of another car (without making the owner and driver of the car in which she was riding as a guest a party defendant to the suit), for injuries sustained by the plaintiff in an automobile collision, this court, speaking through Judge Parke, said: "While the record contains testimony on the part of the defendants which is in contradiction of the evidence tending to sustain the case of the plaintiff, the conflict in proof raises an issue of fact for the jury and not one of law for the court. If the jury were to find the facts which tend to prove the case of the plaintiff, she would be entitled to recover as a guest of the operator of the automobile, who, without any lack of caution and care on her part, suffered an injury through the negligence of the defendants. If there were contributory negligence on the part of the driver of the automobile in which she was being transported, it would not be imputed, under the conditions stated, to the plaintiff. *State, use of Shipley v. Lupton,* 163 Md. 180, 193, 161 A. 393; *Lange v. Affleck,* 160 Md. 695, 697, 155 A. 150; *Gordon v. Opalecky,* 152 Md. 536, 550, 137 A. 299; *Brawner v. Hooper,* 151 Md. 579, 584, 135 A. 420; *Baltimore, Ches. & Atl. R. Co. v. Turner,* 152 Md. 216, 228, 136 A. 609; *Kent County v. Pardee,* 151 Md. 68, 76, 134 A. 33."

Because of the nature of the corporate defendant's granted prayer (and this applies also to the granted prayer of the defendant Monmonier), all conflicts in the evidence will be resolved in favor of the appellant, and

the truth of all evidence, and such inferences as may naturally and legitimately be deduced therefrom, which tend to support her right of recovery, will be assumed. *Clough & Molloy v. Shilling*, 149 Md. 189, 131 A. 343; *Lashley v. Dawson*, 162 Md. 549, 160 A. 738; *Purdum v. Edwards*, 155 Md. 178, 141 A. 550. On behalf of the appellant there is testimony in the record that the corporate defendant was aware of the danger inherent in operating its sweeper at full speed; its agents and servants were instructed to cut down the speed of the brooms upon approaching within ten feet of a car. It was the motorman's duty to give the signal to the shopman, who operated the brooms, to cut down the speed upon such approaches, and the sweeper was equipped with aprons designed to keep the snow from being thrown such distance as to endanger the safety of those lawfully using the parallel highway. And yet, in spite of these precautions, there is evidence in the record from which a jury might conclude that a dense curtain of snow was thrown a distance of at least twenty-two feet, across the cleared portion of the highway, and at a height sufficient to obstruct the view of autoists using the same. Assuming, without deciding, that Hodges was guilty of such negligence as would bar him from recovery, it would still follow that, if his negligence concurred with that of the appellees, or either of them, in causing the injury of which the appellant complains, it was for the jury, upon the facts hereinbefore stated, to say whether the negligence of the appellees, or either of them, or of Hodges, or of the appellees and Hodges, was the proximate cause of said injury. *Lashley v. Dawson, supra.* In the case of *Milwaukee & St. Paul R. Co. v. Kellogg*, 94 U. S. 469, 474, 24 L. Ed. 256, it is said: "The true rule is, that what is the proximate cause of an injury is ordinarily a question for the jury. It is not a question of science or of legal knowledge. It is to be determined as a fact, in view of the circumstances of fact attending it." And in *Baltimore & Potomac R. Co. v. Reaney*, 42 Md. 117, the principle is thus stated: "The law is a practical science,

and courts do not indulge refinements and subtleties, as to causation, that would defeat the claims of natural justice. They rather adopt the practical rule, that the efficient and predominating cause, in producing a given event or effect, though there may be subordinate and dependent causes in operation, must be looked to in determining the rights and liabilities of the parties concerned."

As has been intimated, the application of the principle of proximate cause to the facts in a given case is not always without its difficulties. But the general rule is that, where the injury of the plaintiff is the result of concurring causes, the question is one which should be submitted to the jury; unless, however, the evidence discloses a state of facts showing no connection between the injury and the negligence charged, except the bare possibility that the former resulted from the latter, or an uncontroverted state of facts establishing an efficient intervening cause which would preclude the defendant's act from being the proximate cause of injury. The rule also applies in those cases where it clearly appears that no prudent person could, or ought to have, anticipated the result of the negligent act. 22 *R. C. L.* 149, secs. 32, 33. In *Berry on Automobiles* (4th Ed.), sec. 221, it is said: "Where two or more tort feasors by concurrent acts of negligence which, although disconnected, in combination inflict injury, they may be sued jointly or severally. * * * If each contributes to the wrong, the proximate cause is the wrongful act in which they concurrently participate." The rule, as stated in 45 *C. J.* 920, 923, is: "As a general rule, it may be said that negligence, to render a person liable, need not be the sole cause of an injury. It is sufficient if his negligence concurring with one or more efficient causes other than the plaintiff's fault, is the proximate cause of the injury. So that where several causes combine to produce injuries, a person is not relieved from liability because he is responsible for only one of them, it being sufficient that his negligence is an efficient cause, without which the injury would not have resulted to as great an extent and that such other cause is not attributable to the person injured."

*Brawner v. Hooper, supra; Gordon v. Opalecky, supra; Lange v. Affleck, supra; State, use of Shipley, v. Lupton,* 163 Md. 180, 161 A. 393; *United Railways & Electric Co. v. State, use of Lapka,* 163 Md. 313, 163 A. 90; *Sline & Sons v. Hooper,* 164 Md. 244, 164 A. 548; *Yellow Cab Co. v. Lacy,* 165 Md. 588, 170 A. 190; *Baltimore v. Terio,* 147 Md. 330, 332, 128 A. 353. It follows, therefore, that there was error in granting the corporate defendant's prayer.

As to the granted prayer of the defendant Monmonier, it is our opinion that there exists that degree of conflict in the evidence which did not justify the ruling of the lower court in directing a verdict in his favor. There is positive and direct testimony to the effect that the car in which the plaintiff was a guest was to the extreme right of its side of a cleared or travel space on Frederick Road, of the width of seventeen feet, at the time of the accident. And there is also like testimony that the car owned and operated by the doctor at said time was to the extreme right of its side of the road. If such a state of facts had actually existed, it is apparent that no collision of the two automobiles could or would have occurred at the time of the accident. In this situation we must conclude that the question raised by the conflict in the testimony was one which should have been submitted to the jury, and was not a matter of law. *Opecello v. Meads,* 152 Md. 29, 135 A. 488; *McDowell, Pyle & Co. v. Magazine Service,* 164 Md. 170, 164 A. 148; *Erdman v. Horkheimer & Co.,* 169 Md. 204, 181 A. 221; *International Co. v. Clark,* 147 Md. 34, 127 A. 647, 650. In the last cited case, in which there was a similar conflict in the testimony, it was said: "The record discloses conflicting testimony on this point which must be weighed, and some of which must be believed, disbelieved, or reconciled in order to determine whether at the time of the accident Flieg was acting within the scope of his employment. When such a condition is presented by the evidence, the determination is one for the jury, under proper instructions."

*Judgment reversed, and case remanded for a new trial, with costs to the appellant.*