STATE, For Use of Kathryn Shipley et al., *v.*
ELMER H. LUPTON.

[No. 52, April Term, 1932.]

*Decided June 22nd, 1932.*

184

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Lee S. Meyer,* with whom were *Joseph R. Hudson* and *James J. Lindsay,* on the brief, for the appellants.

*J. F. H. Gorsuch, Jr.,* with whom was *H. Courtenay Jenifer* on the brief, for Elmer H. Lupton, appellee.

*George E. Kieffner,* with whom were *S. Wilmer Pleasants* and *Stewart, Pearre & Kieffner* on the brief, for Bartgis Brothers Company, appellee.

ADKINS, J., delivered the opinion of the Court.

This is a suit in the name of the State, for the use of the widow and infant children of B. Thomas Shipley, who died

from injuries received in a collision between the automobile of I. Newton Shipley, the brother of B. Thomas Shipley, in which the deceased was riding, and that of Elmer H. Lupton, one of the appellees, of which Lupton was the driver and the only occupant.

The collision occurred at the intersection of Frederick Road and Forest Drive in Baltimore County at about 1.30 P. M. on January 7th, 1931. Both cars were being driven on the Frederick Road, the Shipley car towards the west and the Lupton car towards the east. The view of the Frederick Road in either direction from the intersection was clear and unobstructed for at least a quarter of a mile, and the view of the respective drivers as they approached the intersection was unobstructed. The collision occurred as the Shipley car was turned to the left around the right of the center of the intersection in going from the Frederick Road into Forest Drive. According to the testimony of I. Newton Shipley, he was driving the car and his brother was a passenger. Just before he approached the intersection, he had slowed down and held out his hand to warn any one from the rear that might be coming up to keep him from passing as witness started to turn into Forest Drive. "I was looking west, the nearest approaching car I could see was over three or four hundred feet. Thinking there was nothing to prevent me from turning, I continued on and made the turn into Forest Drive. As I entered Forest Drive the thing that attracted me to the car was the car swerving off Frederick Avenue to my right and crashed into my car. * * * I put out my hand to make this turn probably ten (10) feet or more before I struck the intersection of the street. As I was holding my hand up to warn anyone there and looking west and seeing no one in the way I continued up to make the circle. * * * As I started to make the circle over across the intersection where the other car would come down, it would be probably two hundred feet away. * * * When I was twenty-five (25) or fifty (50) feet away from Forest Drive or thereabouts, I could not have been going more than twelve miles an hour. I was slowing down then. * * * When I saw Mr. Lupton's

car swerving off Frederick Road, I was right in the circle and, to make that turn, you could not have gone over eight miles an hour. * * * My brother was sitting on the right-hand side of the car and I drove on the left-hand side. * * * As a result of this impact, it swerved me clear around and drove me down the street—Forest Drive. It swerved the front around to the rear. When my car stopped after the accident, I was forty (40) or forty-five (45) feet from the macadam part of Frederick Road. * * * When Mr. Lupton's car swerved off the road, it could not have been going less than thirty-five (35) miles an hour, because it was like a bullet or cannon ball. It was going at a great rate of speed because in the time it came on there was like a flash. I could not tell how fast. * * * I was off the Frederick Road at the time I was hit. * * * I said I was off the macadam of Frederick Avenue." It appears from the record that twenty-five miles an hour was the speed limit at that point.

The defendants' version of the occurrence is given by Elmer H. Lupton. He testified, so far as is necessary to recite for the purposes of this appeal, as follows: "I was driving a Marmon roadster and turned east on Frederick Road toward Catonsville and Baltimore, and driving at a moderate rate of speed. I was driving properly on the road, that is right of the center of Frederick Road and I continued towards Catonsville until I reached a place where Park Drive and Forest Drive began and run south from the Frederick Road. Then a car that I had noticed going in an opposite direction from what I was, going towards Ellicott City followed by a Ford truck, without any notice, without any warning that I saw in any way, immediately turned in front of me so close that it was absolutely impossible, absolutely impossible, for me to avoid striking this man. I did everything that I could to avoid the accident. I put on my foot brake, I jerked my emergency brake and at the same time swerved my car to the right. I hit this car, which practically stopped my car. I don't believe at the time of the impact my car could have been moving two miles an hour. (Witness explained on cross-examination that he meant after the impact.) I pushed this

fellow out of the way and my car at the time in which I hit this other car continued off of the Frederick Road at about thirty per cent. angle and stopped very easily against the curb and inside of a telephone pole. * * * During the impact I had my hands very firmly, naturally, on my steering wheel. My steering wheel broke and I lost control of my car and it continued on without any guidance from me."

Witness testified that, at the time Shipley's car started to turn, the front of witness' car was ten feet in the entrance of the intersection. "Between the time Mr. Shipley's car started to turn and the collision was within a split second, a second anyhow. The collision took place with a greater portion of my car on Frederick Road, the bed of Frederick Road."

He further testified: "Coming down Frederick Road that afternoon close to Forest Drive, I was going at a very moderate rate of speed; * * * I had been driving a car fifteen or sixteen years. I was going less than twenty-five miles an hour, I am positive. It was a clear day. Probably when I first observed the Buick car I was probably four or five hundred yards away. * * * At that time I couldn't tell the exact location of this Buick machine. There was a couple cars going in my direction and this car and the Ford truck was on the other side. * * * I don't remember the Ford truck fifteen hundred feet away, I don't believe. There was no occasion for me to pick out cars. The only thing I do know is that there were cars on that side and as I come closer to Forest Drive I saw this man long before he turned, forty or fifty feet before he turned. * * * That means that he was forty or fifty feet east of Forest Drive. * * * I was just about the same distance west of Forest Drive as this man was east of Forest Drive. I imagine he was traveling about the same speed as I was making. * * * I didn't see him put his hand out. Q. Why didn't you see that hand? A I did not see it. Q. You were looking for it? A. I was looking for the car and it was so close to me I never expected the car to make a turn and dash in front of me like that fellow did. I expected him to continue to Ellicott City. Q. When

he started to make his turn how far were you away from him? A. When he started to make his turn he was very close to me, practically on top of me."

These were the only witnesses of the actual collision, except the man who was killed. Shipley's wife was on the back seat of his car, but she was busy with her baby and did not see it. Other witnesses testified as to the positions of the cars immediately after the crash, and their condition, and as to the injuries sustained by the occupants of the Shipley car.

At the conclusion of plaintiffs' case, the court granted a demurrer prayer offered by the Bartgis Bros. Company, one of the defendants, whereupon plaintiffs asked leave to enter a *non pros.* as to this defendant. On objection of counsel that the court had already ruled on the prayers, and that it was too late to take a *non pros.*, the court sustained the objection and directed the verdict to be taken, which was done, plaintiffs noting an exception, and judgment was entered on the verdict; and the case proceeded as to the other defendant. Several witnesses for defendant testified that plaintiffs' decedent was found sitting behind the steering wheel, with his hands on the wheel as if he had been driving the car. At the conclusion of the trial the jury found a verdict for the remaining defendant, on which judgment was entered.

We will first dispose of the exception to the ruling of the trial court refusing to permit plaintiffs to take a *non pros.* In our opinion, this ruling was erroneous. Prior to the Act of 1914, ch. 432, it was necessary to call the plaintiff before taking the verdict of a jury and he could exercise his right to take a *non pros.* by refusing to answer. By the Act of 1914, ch. 432, re-enacted by the Act of 1920, ch. 661, now Code, art. 75, sec. 183, it is provided that "it shall not be necessary to call the plaintiff before the verdict is rendered; nor shall the plaintiff be entitled to dismiss his suit or submit to a voluntary judgment of *non pros.* after argument upon the facts has begun in cases tried before a jury or before a court sitting as a jury; but the plaintiff shall have the same right to dismiss such case or submit to a voluntary judgment

of *non pros.* thereon, up to the time when such argument on the facts has begun, as before the enactment of this section except as hereinafter provided." We do not feel at liberty to construe this act to mean something that it does not say. It is in derogation of the common law, and must be construed strictly. If the Legislature had meant that the right should be lost after the court had passed upon the prayers, it would have been easy to so provide. It frequently happens that, after the court has passed upon the prayers, the case is practically ended, although it may not be actually withdrawn from the jury. We have no way of knowing that the Legislature intended that in one case the right to a *non pros.* should be preserved and in the other denied.

The decisions in other jurisdictions are conflicting in construing somewhat similar statutes. 9 *R. C. L.,* p. 195. The precise question has not heretofore been decided in this state. We think, however, the case of *Easter v. Overlea Land Co.,* 128 Md. 99, 97 A. 146, tends to support the conclusion we have reached. The judgment in favor of the defendant the Bartgis Bros. Company will be reversed and the case remanded, so that a judgment of *non pros.* may be entered as to that defendant.

It is suggested by appellants that the case should be remanded for a new trial as to this defendant because by reason of the erroneous ruling the plaintiffs' claim against it has been barred by limitations. But, as no exception was taken to the granting of the demurrer prayer, a new trial cannot be granted.

We come now to the appeal from the judgment in favor of Elmer H. Lupton.

In the course of the trial plaintiffs reserved nine exceptions to rulings on the evidence and one to the ruling on the prayers.

We find no reversible errors in the rulings on evidence. There was no exception reserved to the ruling under the heading Exception No. 1. Exception No. 2 was to the refusal to strike out the answer of a police officer, "You could see where the Marmon car applied his brakes," to the question, "What

did you observe there, Sergeant, if anything, to show where these cars came in contact?" The answer could not have been prejudicial, because the explanation of the officer shows that the marks he described were not brake marks at all, but just ordinary tire tracks which he traced from the macadam to defendant's car.

In the third exception, the witness Shipley, over the objection of plaintiff, was required to answer the question: "As a matter of fact, if you had brought your car to a standstill before making that turn into Forest Drive, this accident would not have happened?" The objection should have been sustained. The answer to the question was obvious. Of course, it would not have happened, because he would not have been in the path of the other car if he had not made the turn. But that settled nothing. We think the answer of the witness showed this, and was therefore not prejudicial.

The fourth, seventh, eighth, and ninth exceptions are abandoned, and the error, if any, in the fifth is admitted to have been harmless.

The sixth exception was to the refusal to permit plaintiffs to take a *non pros.,* and with this we have already dealt.

The tenth exception was to the ruling on the prayers. Plaintiffs offered eight prayers, all of which except the fourth and sixth were granted as offered. The fourth was refused, and the sixth granted as amended. Defendant's second, third, fourth, fifth, sixth, eighth, and ninth prayers were granted.

The objection to the refusal of plaintiffs' fourth prayer and the granting of defendant's fifth are not urged. The reporter is requested to set out plaintiffs' sixth prayer as offered and as amended, and all the granted prayers of the defendant except the fifth.

There were special exceptions filed by plaintiff to defendant's second, eighth, and ninth prayers.

We find no error in the amendment to plaintiff's sixth prayer. The prayer as offered might have been misleading, as suggested in regard to similar prayers in *Chiswell v. Nichols,* 137 Md. 307, 112 A. 363, and *Wash., B. & A. R. Co. v. State,* 136 Md. 103, 111 A. 164. The court's addition

to the prayer did nothing more than remind the jury that, while the negligence of the driver could not be imputed to the passenger, yet he was required to exercise reasonable care for his own protection.

We think there was prejudicial error in granting defendant's ninth prayer. It instructed the jury as a matter of law that, if it found that the Shipley car turned from the Frederick Road into Forest Drive directly in front of the Lupton car, and further found that plaintiffs' decedent, the passenger, saw, or by the exercise of ordinary care could have seen, Lupton's car at such time before the accident occurred as to have enabled him to warn the owner and driver of the Shipley car of the approach of the Lupton car and failed to do so, and that the accident could have been avoided thereby, then the passenger was guilty of negligence, and plaintiffs could not recover.

That is not the law applicable to the facts of this case, as we understand the decisions of this court. There is not the slightest indication from anything that appears in the record that at any time prior to the moment of making the turn the driver was careless or incompetent in any respect, or that he needed any warning to prevent him from turning his car in front of an approaching car which was plainly visible, or that the passenger had time to give the warning after the intention to make the turn was discovered. A passenger would be not only a nuisance but a menace if he were required to be constantly warning the driver of the approach of cars plainly visible to him, and that without regard to distance of the approaching car. The jury was not required by this prayer to find that the passenger was negligent in failing to observe and to warn. In *Gordon v. Opalecky*, 152 Md. 536, 552, 137 A. 299, 305, this court said, in reference to prayers based on the theory that, if the driver was driving at an excessive rate of speed at the time of the accident, and the plaintiff knew it, but failed to protest or object, the jury might infer that plaintiff acquiesced therein, and if she did she could not recover, it was proper to modify that statement of the law by denying the jury the right to infer

such acquiescence, unless the reckless driving continued long enough to give the plaintiff a reasonable opportunity to protest against it. And in the same case another prayer was held bad which embodied the proposition that, if plaintiff could have seen the approach of the truck in time to have warned the driver of the car in which she was a passenger of the presence of the truck in time for him to have stopped his automobile and thereby have avoided the collision, she could not recover. The prayer was held to be bad because, "even if she were (which she was not) obliged at all times to keep a continuous lookout for approaching vehicles, her failure to do so under the circumstances, while it tended to prove negligence, was not conclusive proof thereof."

And in *Balto., C. & A. R. Co. v. Turner,* 152 Md. 216, 228, 136 A. 609, 614, it was said: "One riding, whether as an invited guest in a private car or as a passenger in a public conveyance, such as a taxicab, cannot under all circumstances be expected to be constantly on the lookout for possible danger, and to distract and confuse the driver by a steady flow of warning admonitions, but he is entitled to rely to some extent at least upon the vigilance of the driver, if he appears to have ordinary skill and experience." And in *Kent County v. Pardee,* 151 Md. 68, 76, 134 A. 33, 36: "We think it is only where the driver is acting in a careless manner, or is approaching a danger which is known to the guest and unknown to or not apprehended by him (the driver), that any duty devolves upon the guest to cauton or warn the driver. In fact useless cautions and advice are more often harmful than otherwise."

And in *Montgomery Bus Lines v. Diehl,* 158 Md. 233, 238, 148 A. 453, 455: "But negligence by a passenger, not herself driving, which would defeat her recovery, must be, in effect, a uniting with the driver in incurring the resulting danger, and it involves an opportunity at least to acquiesce in the negligent action."

It should be observed that what is said in these cases has reference to unexpected dangers encountered on the highways

and not to such dangers as everyone crossing a railroad track, passenger as well as driver, is bound to look out for.

Defendant's third and fourth prayers were defective, in that by them the burden is put upon the plaintiffs to prove that the accident was caused by negligence on the part of the defendant. The words "or contributed to" should have been added in each prayer after the word "caused"; and the words "without any negligence of the plaintiffs' decedent contributing thereto" should have been added before the words "and if" in the third prayer, and before the words "and the jury are further instructed" in the fourth prayer. And the words "the plaintiffs have affirmatively shown by a fair preponderance of evidence that" should have been omitted from the fourth prayer. They appear appropriately in defendant's third prayer. "If the defendant was negligent and that negligence caused or contributed to the passenger's injuries, the defendant is responsible, even though another, and a stranger to the suit, did contribute to the injury." *Lange v. Affleck,* 160 Md. 695, 697, 155 A. 150, 151; *Gordon v. Opalecky,* 152 Md. 536, 550, 137 A. 299; *Brawner v. Hooper,* 151 Md. 579, 584, 135 A. 420.

We find no reversible error in the granting of defendant's second, sixth, and eighth prayers or in the overruling of plaintiffs' special exceptions.

As to the second prayer, it is difficult, but not impossible, to conceive of such an accident being unavoidable. But there is evidence from which the jury might have found that it was unmixed with negligence on the part of the defendant; and, if they found that defendant was not negligent, plaintiffs were not injured. That form of prayer was approved in *Lavine v. Abramson,* 142 Md. 228, 120 A. 523 and *Kaline v. Davidson,* 146 Md. 221, 126 A. 68. It is not open to the objection urged by appellants that defendant was guilty of negligence in not seeing the warning given by the driver of the Shipley car in holding out his hand. That was a question for the jury. The prayer might well have been refused for

194

reasons stated in *Coplan v. Warner,* 158 Md. 463, 467, 149 A. 1.

Defendant's sixth prayer states a correct proposition of law. It is too general to be helpful, however; was unnecessary in view of the granting of defendant's eighth prayer; and might well have been omitted.

We find no substantial error in the granting of defendant's eighth prayer. It is not open to the special exception. It does not disregard, as alleged therein, whether or not there was any negligence on the part of the defendant contributing to the happening of the accident. A possible criticism of the prayer could be avoided by the insertion of the word "immediately" before the words "in front of."

> *Judgment in favor of the defendant the Bartgis Bros. Company reversed, with costs, and case remanded in order that plaintiffs may enter a judgment of non pros.*

> *Judgment in favor of the defendant Elmer H. Lupton reversed, with costs, and new trial awarded.*