SLINE AND SONS, INC., *v.* CHARLES M. HOOPER.
[No. 86, October Term, 1932.]

*Decided February 16th, 1933.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, DIGGES, PARKE, and SLOAN, JJ.

*Foster H. Fanseen* and *Hilary W. Gans*, with whom was *Herbert M. Brune, Jr.,* on the brief, for the appellants.

*John Y. Offutt,* with whom were *James J. Lindsay, Jr., L. Wethered Barroll,* and *Levin & Hendelberg,* on the brief, for the appellee.

PATTISON, J., delivered the opinion of the Court.

In this case the appellee, Charles M. Hooper, in the afternoon of May 4th, 1931, was struck and knocked down, at the intersection of Gay and Eden Streets in the City of Baltimore, by an automobile owned by Henry A. Arnold and operated by his son William F. V. Arnold. The accident was caused by a collision between Arnold's automobile and a Ford truck belonging to Sline and Sons, Inc., and driven by Cornelius Sline. The appellee was walking northeast upon the pavement on the westward side of Gay Street, and had reached the northwest corner of Gay and Eden Streets. Gay Street, a narrow street with single car tracks in the middle, crosses Eden Street at an angle of about forty-five degrees. Arnold was driving his automobile on the northwest side of Gay Street, between the curb and the car tracks, going southwest. The appellant Cornelius Sline was either going north on Eden Street, or northeast on Gay Street. The evidence thereon is conflicting. Sline testified that he was traveling on Gay Street, going northeast, and, upon reaching Eden Street, he attempted to cross the car tracks and go north into Eden Street. The other witnesses in the case testified that Sline was traveling on Eden Street, and that upon reaching Gay Street he attempted to cross that street, when the collision occurred. In any event, the collision of the automobile and the truck was at the intersection of the two streets.

To recover for the injuries sustained by him by reason of the accident, Hooper, the appellee, sued Sline & Sons, Inc., Cornelius Sline, Henry A. Arnold and William F. V. Arnold, jointly. The jury returned a verdict for Hooper as against Sline & Sons, Inc., and Cornelius Sline, and a verdict in favor of Henry A. Arnold and William F. V. Arnold. A

judgment was accordingly entered upon the verdict against Sline & Sons, Inc., and Cornelius Sline. It is from that judgment that the appeal in this case was taken.

In the trial of the case, ten exceptions were taken to the rulings of the court on evidence, and one to its rulings on the prayers. The plaintiff asked for one instruction only, which was granted; while the defendants, Sline & Sons, Inc., and Cornelius Sline, asked for six. The first of these was granted; the third, fifth and sixth were granted as modified; and their A, second and fourth prayers were refused. The exceptions of the defendants to the rulings of the court on the prayers were confined to its refusal to grant the defendants' A, second and fourth prayers, "both as originally offered and as amended."

The defendants' A prayer is a demurrer to the evidence, and it thus becomes necessary for us to state somewhat in detail the evidence in the case.

The appellee, Hooper, testified that he was about sixty-two years of age, and unmarried; and at the time of his injury he was employed by the Atlas Toy Company, on Charles Street near Pratt, as a foot power press operator, using his right foot to work the press. His wages while with that company were fourteen or fifteen dollars a week. Previous to this, he had been in the employ of a Mr. Phelps for about thirty years. He was on his way home from work, on the north corner of Gay and Eden Streets, and in the act of crossing Eden Street, when struck by the automobile. One foot was upon Eden Street and the other was on the curb, and he saw the automobile coming down Gay Street "awful fast, so fast I could hardly see it." He did not see the appellants' truck, he only saw the car coming down Gay Street from the northeast; nor did he see any automobiles going up Gay Street—"everything was clear when I tried to step off until that crash came." He did not see the collision between the automobile and the truck, but heard a crash and was hit.

Paul E. Burke, a truck salesman, testified that he knew none of the parties to the suit. At the time of the accident, he was with his wife in the automobile on their way home.

He was driving northeast on Gay Street, following a line of traffic which included a street car and four or five automobiles which were moving very slowly. As the automobile immediately ahead of him was crossing the center of Eden Street, he saw a truck belonging to Sline & Sons, Inc., approach from his right, traveling north on Eden Street, "at a pretty good rate of speed, I would say between thirty and thirty-five miles an hour, I am not sure about that, I don't know the speed, he had the right of way over me." Witness stopped his car to let the Ford truck go through between it and the automobile immediately in front of him, and "as far as he could tell the Ford car (truck) did not slacken its speed as it approached Gay Street, continued the same speed." About this time he saw a Franklin car, the one driven by Arnold, coming southwest on Gay Street. He could not say whether the Franklin car was going fast or not. When the witness stopped his automobile, a gap opened between him and the automobile immediately ahead of him. "The driver of the Ford swung to the left to get through the gap and then swung to the right after he got through." The collision occurred at a point in Gay Street north of the car tracks, and, as a result of the impact, the Franklin car was knocked to the right towards the appellee, and struck him as he was about to cross Eden Street. He was struck by the automobile's right fender, but the witness could not say where the appellee was hit, as the automobile was between the witness and Hooper; nor could he state the exact position of the car and the truck after the collision.

William F. V. Arnold, the driver of the automobile which collided with the truck, testified that on the occasion of the accident he was driving southwest on Gay Street, and until he reached Ashland Avenue, which crosses Gay Street running east and west, he was following a street car which turned up Ashland Avenue. The intersection of Gay Street and Ashland Avenue is only a short distance from the intersection of Gay and Eden Streets, there being but five business houses on the west side of Gay Street between these intersections. Arnold testified that, after going about half the dis-  ·

tance between the intersections mentioned, he practically came to a standstill to allow three colored children to cross the street, and before starting his car he put it in second gear and continued by the solid line of traffic behind the street car; and, when near Eden and Gay Streets, he put his gear in high and was then going between fifteen and eighteen miles an hour. When he reached Eden Street he slowed up to look to the right on that street, and then looked to the left and saw Mr. Sline "coming through the gap. He was not coming north on Gay Street either, he was coming right straight through Eden Street * * *. He was about in the center of Eden Street going north on Eden Street * * * coming through (the gap) at a slight angle, and before I had a chance to get the brake on to the full extent, I was hit * * *. He was coming plenty fast." Because of the solid line of traffic "I could not see anything on the other side of the traffic until right on top of it * * * as I got to the gap he was just entering the gap at an angle eight feet distant from me." The witness was then going about fifteen miles an hour. He had assumed nothing would come from the north because of the traffic following the street car. It had been raining and the streets were wet, and the accident left very definite skid marks where the front wheels had been shoved across. "He lost control of the car from the hit on the front wheels and fender, and the car spun around * * * he ended up at an angle about two and a half feet from the curb where the sewer hole was. He first saw Mr. Hooper when he was four feet from him." Mr. Hooper did not look up. Witness stated that, when the Ford truck struck him, he had no control over his car. When Hooper was hit by his car, he was off the curb completely, about four feet from the curb. Witness further testified that the truck, after the collision, was parallel with his car in the middle of Eden Street.

Cornelius Sline testified that he was driving the truck owned by Sline & Sons, Inc., and was going north on Gay Street and "stopped right in the middle of the car track there, not going over the other track." Arnold, who was driving the car, came down the street. Witness stood there a

minute, could do nothing, and Arnold struck the left front fender of his truck and "went and hit Mr. Hooper while he was at the curb, went on a slant about twenty feet away from his car." Arnold's car, Cornelius Sline said, was coming down Gay Street about forty miles an hour. On cross-examination, he testified that he had not been on Eden Street, he was positive of that. He was going north on Gay Street to make a left turn, and there were no machines or trolley cars in front of him, and no machines parked north of Eden Street on Gay Street to his knowledge. He did not see any machines at all on the other side. The only thing around him was a car coming south at forty miles an hour or more, "and for no reason as far as he could see, with plenty of room to pass, the Franklin car crashed into him."

There is evidence found in this case, and, however conflicting it may be, we must assume it to be true, tending to show that Cornelius Sline, the driver of the truck belonging to Sline & Sons, Inc., was negligent in the operation of it; and, without discussing that evidence, the effect of which would be to prolong this opinion unnecessarily, we will state that in our opinion it was legally sufficient to take the case to the jury in respect to the appellants. We therefore find no error in the court's refusal to grant appellants' A prayer.

The court was asked by the appellants' second prayer to instruct the jury that "under the laws of the State of Maryland, the operator of a motor vehicle shall have the same under control at all times and shall reduce its speed to a reasonable and proper rate at a crossing or intersecting highway, and if the jury believe from the evidence in this case that the cause of the accident was the failure of one, Henry A. Arnold to have his car under control immediately prior to the time of the accident referred to in the evidence, if the jury so find, the defendants, Sline & Sons, Inc., and Cornelius Sline are not liable and the verdict of the jury should be for the said defendants."

It will first be observed that the prayer says "if the jury believe * * * the cause of the accident was the failure of one, *Henry A. Arnold* to have his car under control," etc. There

is error here, as Henry A. Arnold was not driving the car. But this was probably a typographical error and the jury might have so understood it and not have been misled thereby. In addition to this, the prayer concludes by saying that, if the facts therein stated were found to exist, "Sline & Sons, Inc., and Cornelius Sline are not liable and the verdict * * * should be for the said defendants." It does not say what defendants, but we think the jury would have properly understood it by the context of the prayer.

The serious objection to this prayer is the instruction therein contained that Sline & Sons, Inc., and Cornelius Sline were not liable if the jury believed that the *cause* of the accident was the failure of the driver of the Arnold car to have it under control immediately prior to the time of the accident when crossing the intersection of Gay and Eden Streets, without requiring them to consider any and all evidence tending to show that the negligence of Cornelius Sline in the operation of the truck either contributed to or caused the accident.

This is not the ordinary case of a plaintiff suing the defendant for injuries sustained in being knocked down by defendant's car while crossing the street. But here the suit is against four defendants, the owners and drivers of the truck and car respectively, to recover for the injuries sustained by the plaintiff as a result of a collision between the truck and the car. The defendants were sued jointly. If the injury sustained was caused by the joint negligence of the defendants, all were liable, but, if the negligence of one driver only was the direct and approximate cause of the accident, then he and the owner only would be liable. The mere statement that the cause of the accident was the failure of William Arnold to have his car under control at the time was not sufficient. It was necessary to find that the negligence of William Arnold was the sole, direct, and approximate cause of the accident, before it can be said that the codefendants, Sline & Sons, Inc., and Cornelius Sline, were not liable, because of Arnold's negligence. *Friedman v. Hendler Creamery Co.,* 158 Md. 146, 148 A. 426. It was upon this principle of law that the appellants were controlled in asking for their first

instruction, which was granted. By that instruction the jury were told, if they found the accident and injury were caused *solely* by the negligence of the defendants Henry A. Arnold and William F. V. Arnold, then the verdict of the jury must be for the defendants Sline & Sons, Inc., and Cornelius Sline.

This second prayer, we think, was properly refused.

The fourth prayer is also bad, as it combines in one prayer entirely unrelated propositions, and therefore is calculated to mislead the jury. *Beam Motor Car Co. v. Loewer,* 131 Md. 557, 102 A. 908, 910. In the case just cited, Judge Stockbridge, speaking for the court, said: "It is true that these different propositions were separated into different paragraphs (which is not done in this case), but such prayers while not necessarily a cause for reversal when granted, nevertheless have been condemned by this court in numerous cases, the latest being *Wagner v. Klein,* 125 Md. 229, 93 A. 446. An instruction in this form is so clearly liable to mislead a jury that reversible error cannot be ascribed to the refusal of such a prayer."

The first, second, and fourth exceptions to the evidence were waived. The third was taken to the ruling of the court in permitting Charles S. Otto, superintendent of the Belt Can Company, to testify that, when the plant shut down because of the depression in 1929, the appellee was receiving from that company as wages the sum of $26.70 per week. It was certainly proper for the jury to know what his earning capacity was at and before the accident, but it is here contended that the evidence offered did not tend to show the earning capacity of the appellee in 1931, but in 1929, two years before the happening of the accident. If this contention should be held sound, which we do not determine, the error in the admission of this evidence should not, we think, be regarded as reversible. The appellee had been regularly working with the Belt Can Company for many years, and had ceased to work for them, not because of his inability to do the work, but because there was no work for him to do. Thereafter he obtained employment with the Atlas Toy Company, and, until the day of the accident, continued to do for them the same

kind of work which he had done for the Belt Can Company, for which he told the jury he received fourteen or fifteen dollars per week. It cannot, we think, be properly said that the jury was misled by the evidence objected to in ascertaining the earning capacity of the appellee at the time of the accident.

The fifth exception was in allowing Dr. Levy, who was a specialist in neurology and psychiatry, nervous and mental diseases, to testify after an examination of the appellee that he was suffering from a nervous condition, the contention being that the existence of such a condition was not admissible in evidence under the declaration, which alleged that, as a result of the injury, the appellee "sustained serious and dangerous injuries to his head, body and limbs, some of which are permanent, was caused to suffer and will continue to suffer great physical pain and mental anguish * * * and has been prevented from attending to the duties of his vocation and will continue to be prevented from performing said duties."

The language of the declaration was, we think, sufficiently comprehensive to include a nervous condition of the appellee if found to be the result of the injury sustained by him. It was not essential that the declaration should have stated with greater particularity the legal and natural consequences of the injury inflicted. *Hussey v. Ryan,* 64 Md. 426, 2 A. 729.

The eighth exception was to a hypothetical question asked Dr. Levy, who had heard the testimony in the case, and had examined the appellee: "Are you able from that information to express an opinion as to whether those symptoms that you found existing in this patient in reference only to his nervous system could be probably referred or attributed to that accident, which I have mentioned, which occurred on May 14, 1931?" It is not claimed that the doctor was not legally qualified as an expert in relation to the matters about which the inquiry was made. The question was technically erroneous, inasmuch as it failed to embrace the assumption that the evidence heard by him was true, but this did not constitute a reversible error, as no objection was made thereto for

such cause, so far as the record or briefs disclose. *Gordon v. Opalecky,* 152 Md. 545, 137 A. 299. We discover no reversible error in permitting this question to have been asked the witness.

The other exceptions, the sixth, seventh, ninth, and tenth, were reserved by the codefendants, Henry A. and William F. V. Arnold, and in them, so far as the record discloses, the appellants did not join. Because of their failure to do so, it is contended by the appellee that these exceptions are not available to them. This question, so far as we are aware, has not been presented to, or decided by, this court, though there are decisions in other jurisdictions sustaining the contention of the appellee. *Alabama Power Co. v. Talmadge,* 207 Ala. 86, 93 So. 548, 555; 3 *C. J.* 750, and cases there cited. There is, we think, much force in this contention, certainly in that class of cases in which the present case may be classified, where the interest of the codefendants are not the same and the defenses quite different. By reason thereof, evidence to which one might object and reserve exceptions, the other would not object to, because not injurious and possibly beneficial to him. It is shown in the trial of the case before us that there was no joint defense made, but, on the contrary, the defendants were hostile throughout the trial, each cross-examining the witness produced by the plaintiff and each attempting to put the liability upon the other. Therefore, it would seem that we should not assume that an exception reserved by one was participated in by the other. The rule to us appears logical, and is one, we think, that should be recognized and followed at least in this class of cases.

We will add, however, that we have carefully examined the other exceptions and we do not find in them any reversible error.

As we find no errors committed by the court in the trial of this case, the judgment of the court will be affirmed.

*Judgment affirmed, with costs.*