## YELLOW CAB COMPANY *v.* ROBERT LACY.
[No. 57, October Term, 1933.]

*Decided January 11th, 1934.*

The cause was argued before Bond, C. J., Pattison, Urner, Adkins, Digges, Parke, and Sloan, JJ.

*William N. McFaul,* with whom were *Dorton & McFaul* on the brief, for the appellant.

*Clarence A. Tucker* and *Biscoe L. Gray,* with whom were *Knapp, Tucker & Thomas* on the brief, for the appellee.

Sloan, J., delivered the opinion of the Court.

The plaintiff, Robert Lacy, while a guest in the automobile of Robert H. Archer, was injured in a collision, at the intersection of Charles and Lanvale Streets in Baltimore, of Mr. Archer's car with a taxicab of the Yellow Cab Company,

defendant, and, from a judgment for the plaintiff, the defendant appeals.

About 4 o'clock on the afternoon of June 19th, 1931, Mr. Lacy, in a car being driven by Mr. Archer, was proceeding south on North Charles Street in Baltimore, all of the witnesses testify, at a moderate rate of speed. A taxicab of the defendant, driven by James G. Taylor, was coming east on Lanvale Street toward Charles, the driver intending to cross Charles Street and go on to St. Paul Street, thence to Union Station with his passenger. Some witnesses testified that the taxicab was traveling at from thirty to thirty-five miles per hour. The taxicab, coming from the right, under the law had the right of way. Code (Supp. 1929), art. 56, sec. 209. There is evidence from at least two witnesses that the taxicab struck the Archer car in its right rear, after it had cleared the Lanvale Street driveway and as much as ten feet south of the west curb on Lanvale Street. If this be true, and there is testimony of the fact as stated, all the taxicab had to do was to keep in a straight course, which would have taken it across Charles Street in the rear of the Archer car. Mr. Lacy testified: "We were going about fifteen miles an hour as we entered Lanvale Street and went across it, and I happened to look out of a window and saw a Yellow cab approaching us at a high speed from the right. It advanced without slowing or swerving and passed back out of my view. A moment after that I heard, first I felt a crash at the rear right of our car. I lurched forward, the door opened and I pitched out backward on to the street. * * * We were near the centre of Lanvale Street," the cab forty or more feet away. Of the cab's speed, he said he was surprised "that anyone would come into Charles Street at any such speed as that." Mr. Archer testified that he could and did see to his right up Lanvale Street, and "there was no traffic coming." If this were a suit between him and the defendant, his evidence might be controlling against him, but, as his guest is suing, his evidence, in this respect, loses its importance, unless the plaintiff failed, under the circumstances, to do what he could and should have done to avoid the collision.

Mr. Lacy testified that he did not call Mr. Archer's attention to the fact that he saw the cab; that there was no time to say anything; that he expected the cab to pass back of the Archer car. With this as the only notice the plaintiff had of the location of the defendant's cab, and of the time and opportunity to warn Mr. Archer of his peril, even if he could or should have anitcipated the danger, his contributory negligence, if any, should have been, as it was, submitted to the jury. *State, use of Shipley, v. Lupton,* 163 Md. 180, 192, 161 A. 393, and cases there cited. Mr. Archer testified that he had cleared the crossing when the collision occurred, and he is corroborated by a pedestrian who saw the collision.

At the conclusion of the evidence, the plaintiff was granted four prayers, his A or damage prayer, and his sixth, seventh, and eighth, and the court granted all of the defendant's eleven prayers, except its A prayer, which asked an instructed verdict, and its fourth prayer, which correctly stated the rule of the road at street intersections. The court of its own motion gave two instructions, the first of which included the rule of the road substantially as stated in the defendant's rejected fourth prayer. The defendant's fifth exception is to the granting of the plaintiff's prayers, the refusal of its A and fourth prayers, the modification of his first, third, sixth, eighth, and ninth prayers, and the court's two instructions.

The points discussed by the defendant in its brief and at the argument were three of its four exceptions to rulings on the evidence, the modification of its prayers, and the two instructions by the court. The defendant, in discussing the refusal of its A prayer, argues that the plaintiff's evidence is legally insufficient because it shows that Mr. Archer's negligence and not the defendant's was the proximate cause of the accident, on the theory of the decision in *Gitomir v. United Railways & Electric Co.,* 157 Md. 464, 146 A. 279, which was the case of a driver whose automobile was parked at the sidewalk, and who, first looking back before turning into the driveway, was struck by a street car which she said she did not see, but which she could and would have seen

had she looked. See *Sullivan v. Smith,* 123 Md. 546, 556, 91 A. 456. If Mr. Archer were the plaintiff, that might have been a defense. If it depended on the testimony of the plaintiff, no one could tell how the accident happened, and the defense then might be that the mere happening of an accident is not evidence of negligence. Mr. Lacy's testimony was that, when the Archer car was midway of the intersection, the cab was approaching at a high rate of speed, about forty feet away. From those relative positions, how did the defendant's car, in so short a distance, half the width of Lanvale Street, get so far out of its course as to hit the Archer car after it had cleared the Lanvale Street driveway ten feet, which Mr. Archer and Mr. Carroll both testified was the location of the two cars when they collided? Mr. Lacy said he thought the cab would pass behind him. Instead, did the cab race after them, or did it swerve out of its course to avoid collision with the traffic into Lanvale Street from Charles? There is nothing in the record but confusion as to what caused the cars to collide. The only evidence of the defendant's negligence is that the collision occurred at a point on Charles Street where the Archer car had a right to be and where the cab, at the moment, had no right to be, thereby causing the injuries, and this is the evidence of the defendant's negligence, so far as it affected Mr. Archer's guest, the plaintiff in this case, and warranted the action of the court in refusing to take the case from the jury. There is some evidence from which it might be inferred that both cars got mixed up in the Charles Street traffic, but no one explained how.

The defendant's first prayer was that the burden of proof was on the plaintiff to show by a preponderance of the evidence that the accident was "caused" by the negligence of the defendant, to which the court added, "or contributed to," and the same words were added to follow the word "caused" in the eighth prayer. Under the facts of this case, as testified to by Messrs. Archer and Carroll, there was evidence that the plaintiff's injuries were caused wholly by the de-

fendant's driver, but it also might be inferred from the testimony of Mr. Lacy that at the instant of collision the Archer car had not cleared the Lanvale Street driveway, and, if this were true, with the two wholly inconsistent theories and the contradictory character of the evidence, the question of the defendant's contribution to the accident was properly left to the jury. The defendant contends that it was Mr. Archer's violation of the right of way rule at street intersections which caused the accident. If, on the other hand, there was evidence that the defendant's cab approached the intersection at Charles Street at an excessive rate of speed and out of control (*Taxicab Co. v. Ottenritter*, 151 Md. 525, 530, 135 A. 587), and that these factors combined with Mr. Archer's violation of the right of way rule to produce the injuries, then the question as to whether both concurred and each contributed to produce the injury of an innocent guest or passenger was properly a question for the jury, and the modification of the prayer was proper, on the authority of *Sline v. Hooper*, 164 Md. 244, 251, 164 A. 548; *State v. Lupton*, 163 Md. 180, 193, 161 A. 393; *Lange v. Affleck*, 160 Md. 695, 697, 155 A. 150; *Gordon v. Opalecky*, 152 Md. 536, 550, 137 A. 299; *Brawner v. Hooper*, 151 Md. 579, 584, 135 A. 420.

The defendant excepts to the addition to its third and ninth prayers by the court of the words: "The jury are further instructed that the words 'direct and proximate cause' (in the third prayer 'proximate' only) as used above do not mean sole cause." The prayers as requested by the defendant were to the effect that the verdict should be for the defendant unless the jury should find that the defendant was guilty of negligence, and that such negligence, in the third prayer, was the "proximate," and in the ninth prayer, the "direct and proximate cause of the injuries," etc. While the additions may be very general and not necessarily always applicable where two causes combine to produce injury, we do not consider it inapplicable to the evidence in this case. The rule as stated in 45 *C. J.* 920, 923, is: "As a general rule, it may

be said that negligence, to render a person liable, need not be the sole cause of an injury. It is sufficient if his negligence concurring with one or more efficient causes other than the plaintiff's fault, is the proximate cause of the injury. So that where several causes combine to produce injuries, a person is not relieved from liability because he is responsible for only one of them, it being sufficient that his negligence is an efficient cause, without which the injury would not have resulted to as great an extent and that such other cause is not attributable to the person injured." See *Brawner v. Hooper,* 151 Md. 579, 584, 135 A. 420; *Gordon v. Opalecky,* 152 Md. 537, 550, 137 A. 299; *Lange v. Affleck,* 160 Md. 695, 697, 155 A. 150; *State, use of Shipley, v. Lupton,* 163 Md. 180, 193, 161 A. 393; *United Railways Co. v. State, use of Lapka,* 163 Md. 313, 329, 163 A. 90; *Sline & Sons v. Hooper,* 164 Md. 244, 251, 164 A. 548.

As Judge Pattison, in the opinion in *Baltimore v. Terio,* 147 Md. 330, 335, 128 A. 353, 355, said: "The question of proximate cause of injury is in very many cases difficult of determination. It is not a question of science or legal knowledge, * * * but one to be decided upon common sense principles in the light of the surrounding facts and circumstances of the case under consideration."

If only one automobile had been involved as the cause of the plaintiff's injuries, the prayer as drawn by the defendant would have submitted the only question being tried, and it would have been proper to submit to the jury the question as to whether the defendant's negligence, if found, was the proximate cause of the plaintiff's injuries; but it was not error to add, in this case, that it need not be the sole cause, inasmuch as the injuries to a third party were the result of a collision with another car. Unless the jury were so instructed, they might have excused the defendant because there was the possibility that the other car, under the rule of the road, was more to blame in spite of the fact that there was evidence of concurrent negligence of two cars, both or either of which might have been found to be an efficient cause or causes producing the result for which suit was

brought. See *Sline & Sons v. Hooper,* 164 Md. 244, 251, 164 A. 548.

The defendants also object to the substitution by the court in its sixth prayer of the word "sole" for "proximate," which requires them to find for it if they believe from the evidence that the defendant was not guilty of negligence in the operation and control of its car, but that, if they believe the sole cause of the accident to have been due to the negligent driving, if they so found, of Mr. Archer, then their verdict should be for the defendant. In order to absolve the defendant, the plaintiff's injuries had to be due to the sole negligence of the driver of the car in which he was riding, and not to the concurrent negligence of the drivers of both cars. Juries might not understand the legal meaning of the word "proximate," but they do not guess or speculate on the word "sole." Such an instruction was approved in *United Rys. & Elec. Co. v. State, use of Lapka,* 163 Md. 313, 329, 163 A. 90. See, also, *Sline & Sons v. Hooper,* 164 Md. 244, 251, 164 A. 548.

The fourth instruction asked by the defendant did not conclude to a verdict, but only stated the rule of the road at street intersections. It stated the rule as contained in section 209 of article 56 of the Code, and it would have been error to refuse it, if it had not been incorporated in the court's first instruction, which was so drawn as to conclude to a verdict. *Hendler Creamery Co. v. Friedman,* 160 Md. 526, 154 A. 93. The defendant, however, objects to so much of the court's first instruction as required the jury to find its car to have been driven with "ordinary care and caution," while no such duty was required of Mr. Archer. We fail to see the logic of this contention. The prayer did require the jury to find for the defendant if they found the accident to be due solely to the failure of the driver of the car in which the plaintiff was riding to yield the right of way (which was the only charge of negligence against hmi), without any negligence on the part of the defendant thereunto contributing. This is all the defendant was entitled to ask, and there was no error in anything required of the jury in arriv-

ing at a verdict, all of the plaintiff's prayers requiring the jury to find the plaintiff free of contributory negligence to entitle him to recover.

The remaining objection to the prayers was in the court's definition of negligence in its second instruction. Negligence was defined as meaning "lack of ordinary care"; and "ordinary care," in turn, was defined as "that degree of caution, attention, activity and skill which are habitually employed by, or may reasonably be expected from, persons in the situation of the respective parties under all the circumstances surrounding them at the time." The defendant's criticism of this prayer is that the use of the word "skill" means expertness, and puts the meaning of "ordinary care" on "too high a level'," and was therefore prejudicial to the defendant. It has often been said that they are relative terms, depending upon the circumstances of each case and the requirements of the situation. The degree of care that one owes to respect another's safety depends on his duty in the relation or situation in which the respective parties find themselves. Nowhere is it much better expressed than by Judge Bartol in *Balto. & O. R. v. Breinig,* 25 Md. 378, 386, when he said: "It is a very obvious principle of law, as well as of justice and common sense, that every one, in the prosecution of his business is bound to exercise that degree of skill, prudence and care, to avoid inflicting injury upon others, proportioned to the danger"; a definition strict enough, yet flexible enough to meet any duty, relationship, or condition. Measured by the standard of this definition, it cannot be said that there was error in the court's second instruction. *Philadelphia, W. & B. R. Co. v. Kerr,* 25 Md. 521, 530.

There were four exceptions on the evidence, three of which were presented in the brief. If we had found any reversible error in the record, so that a new trial would follow, it would be in order to pass on the admissibility of the questions objected to, but, as there is no reversible error in them or elsewhere in the record, we think it unnecessary to discuss these exceptions.

*Judgment affirmed; costs to be paid by the appellant.*