JOHN S. LYNCH *v.* MAYOR AND CITY COUNCIL OF BALTIMORE

[No. 86, October Term, 1935.]

*Decided January 16th, 1936.*

The cause was argued before BOND, C. J. URNER, OF-FUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*Louis S. Ashman,* for the appellant.

*Edwin J. Wolf, Assistant City Solicitor,* with whom were *R. E. Lee Marshall, City Solicitor,* and *J. Francis*

*Ireton, Assistant City Solicitor,* on the brief, for the Mayor and City Council, appellee.

*Walter V. Harrison,* with whom was *Robert France* on the brief, for the Receivers of the United Railways & Electric Company, appellees.

JOHNSON, J., delivered the opinion of the Court.

On December 13th, 1934, John S. Lynch brought suit in the Baltimore City Court against the Mayor and City Council of Baltimore and Lucius S. Storrs and William H. Meese, receivers of the United Railways & Electric Company of Baltimore, to recover damages for personal injuries sustained by him on August 3rd, 1934, because of an alleged failure of the defendants to keep in proper repair a certain portion of the bed of Greenmount Avenue, a public street of the City of Baltimore, while crossing which he, because of its defective condition, tripped and fell, thereby sustaining serious and permanent injuries. General issue pleas were filed by the defendants, upon which issue was joined, and the cause was tried May 29th, 1935, before a jury, whose verdict was in favor of both defendants. Subsequently plaintiff made a motion for a new trial, and, this being overruled, judgment absolute was entered upon the verdict in favor of defendants. It is from this judgment that the present appeal is taken.

The record contains seven exceptions, the first five of which are to rulings on evidence, the sixth to rulings on the prayers of both defendants, while the seventh relates to the action of the trial court in overruling plaintiff's motion for a new trial.

About 10 o'clock p. m. on August 2nd, 1934, the plaintiff met his friend, Edward Drury, on Greenmount Avenue near Twenty-Eighth Street, and they went to a place known as "Uncle Walt's Tavern," a saloon in the twenty-six hundred block of Greenmount Avenue and on the east side thereof. They remained there until shortly after midnight, consuming several glasses of beer. Upon

leaving, they crossed over to the west side of the street and went north to a produce store in search of a watermelon, but left without making a purchase. It was then cloudy and drizzling rain. According to the plaintiff, the injuries for which he sued were sustained by him while attempting to return to the east side of Greenmount Avenue at Twenty--Eighth Street, when his foot was caught in a hole along the side of one of the tracks of the railway company, causing him to fall upon his shoulder, while the defendants contended that plaintiff's injuries were sustained because of an intoxicated condition which caused him to fall from the curb on the west side of Greenmount Avenue into the street.

We will first consider the exceptions taken to rulings on evidence. The plaintiff's friend, Drury, who was with him at the time he was injured, had stated on direct examination that certain paving blocks had previously been laid in the bed of Greenmount Avenue along both sides of the railway track, and the block nearest the track was missing, forming a pocket and making an incline into which the plaintiff's foot was caught while crossing the street; that on the afternoon of the following day the witness and his wife went to the scene of the accident with plaintiff and his wife to show them the pocket which caused plaintiff's injuries, and, after answering that it was in the same condition on Saturday as it was on the previous day, he was asked if the hole had been fixed and when it was fixed. The court sustained an objection to this question, and from this action the first exception was noted. The second exception was taken to the proffer of plaintiff to testify that in September following, after leaving the hospital, he observed the hole into which his foot was caught, and that the hole continued there until October, when the officers sent a report regarding its condition; while the third exception arose because of the court's refusal to permit the plaintiff to testify as to when the condition causing the hole was finally repaired.

Officer Frank L. Duffy, called by the defendants as a witness, while testifying on cross-examination, was asked

this question: "Q. (Mr. Ashman). Well, now, Officer, did you make a report to the Captain that there were holes there on Greenmount Avenue, between Whitridge Avenue and 28th Street, and since had been repaired properly? The Court: Don't answer that question; I will sustain an objection." The fifth exception was taken under these circumstances: The same officer further testifying on cross-examination was shown a report made by him on October 20th, 1934, concerning certain holes in the bed of Greenmount Avenue by natural wear and tear of traffic. After identifying the report, he was asked to give its date, and the court stated: "I will not permit that; the report should show that." An exception was taken to this ruling.

Since these five exceptions were taken to the refusal of the trial court to permit the plaintiff to prove the condition of the street at the alleged scene of the accident, not at the time the accident took place, but *subsequent* thereto, or to allow him to prove subsequent repairs to that part of the street, they will be considered together. It should be observed there was no proof by the plaintiff that upon such subsequent dates, when the conditions were observed or when the repairs were made (more than three months later), the condition of that part of the street had not changed since the date plaintiff was injured. This, too, is quite understandable, when we consider the constant changes which might be expected to occur to the bed of a street, subjected to such use of street cars and other traffic as the record before us indicates existed on Greenmount Avenue. There was therefore no error in the ruling from which the second exception was taken, since the proffer of the plaintiff failed to include any element to the effect that the condition of the street was the same in September as when plaintiff was injured. *Maryland, D. & V. Railroad Co. v. Brown,* 109 Md. 304, 319, 71 A. 1005; *Annapolis Gas Co. v. Fredericks,* 112 Md. 449, 455, 77 A. 53 and cases there cited; *Wigmore on Evidence,* vol. 1, sec. 437; 10 *R.C.L.,* p. 943.

This likewise applies to the rulings in the first, third, fourth and fifth exceptions, as a result of which plaintiff was not permitted to prove that defendants had made repairs to Greenmount Avenue *after* he was injured. As a general rule, evidence of repairs is inadmissible as a basis for establishing negligence in maintaining a street in a dangerous condition at some previous time. In support of this view we quote from *Wigmore on Evidence,* vol. 1, sec. 283, as follows: "If machines, bridges, sidewalks, and other objects, never caused corporal injury except through the negligence of their owner, then his act of improving their condition, after the happening of an injury thereat, would indicate a belief on his part that the injury was caused by his negligence. But the assumption is plainly false; injuries may be and are constantly caused by reason of inevitable accident, and also by reason of contributory negligence of the injured person. To improve the condition of the injury-causing object is therefore to indicate a belief merely that it has been capable of causing such an injury, but indicates nothing more, and is equally consistent with a belief in injury by mere accident, or by contributory negligence, as well as by the owner's negligence. Mere capacity of a place or thing to cause injury is not the fact that constitutes a liability for the owner; it must be a capacity which could have been known to an owner using reasonable diligence and foresight, and a capacity to injure persons taking reasonable care in its use. On this ground, then, namely, that the supposed inference from the act of improvement is not the plain and most probable one, such acts may be excluded. To be sure, it may be argued that, on the general theory of Relevancy (ante, pp. 31, 38), it would suffice for admissibility if merely the inference was a fairly possible one—leaving it to the opponent to argue that it was the less probable one. Theoretically, it would be perhaps difficult to deny this. But in the present instance an argument of policy has always been invoked to strengthen the case for exclusion. That argument is that the admission of such acts, even though theoretically not

plainly improper, would discourage all owners, even those who had genuinely been careful, from improving the place or thing that had caused the injury, because they would fear the evidential use of such acts to their disadvantage; and thus not only would careful owners refrain from improvements, but even careless ones, who might have deserved to have the evidence adduced against them, would by refraining from improvements subject innocent persons to the risk of the recurrence of the injury. Whatever, then, might be the strength of the objection to such evidence from the point of view of relevancy alone, the added considerations of policy suffice to make clear the impropriety of resorting to it."

We now come to a consideration of the prayers in the case. The court granted the three prayers offered by the plaintiff, and the city's 1, 3a, 3b, 4, 5, and 6; likewise the 1, 2, and 3 prayers of the receivers. With regard to the three prayers last mentioned, it is sufficient to state that the first two of them in different phraseology submitted the question of contributory negligence on the part of the plaintiff, while the third was a burden of proof prayer made applicable to the receivers. Plaintiff criticizes the third prayer, because it applies only to "Storrs and Meese" as defendants, his argument being that few lawyers and many laymen fail to understand the legal position of receivers respecting liability for torts committed by employees, and the jury may have been misled by the prayer and understood they were required to find, as a condition precedent to allowing plaintiff to recover, that the receivers personally participated in some act of negligence, but in this view we are unable to agree. The prayer is the customary burden of proof prayer, and the receivers were entitled to have such an instruction submitted to the jury. Nor is any error found in the action of the court in granting the other two prayers of the receivers, by which the jury were correctly instructed upon the law of contributory negligence.

Of the prayers offered by the city, six were granted;

being Nos. 1, 3a, 3b, 4, 5, and 6. By the first, the jury were instructed that, in order to entitle the plaintiff to recover, they must be satisfied by a preponderance of evidence (1) that the city was negligent; (2) that such negligence on the part of the city was the direct and proximate cause of the injuries sustained by the plaintiff. We are told that this prayer is erroneous, because it contains a requirement that the negligence must have been the direct and proximate cause of the injury, whereas, there being two defendants sued jointly, each would have been liable if its negligence merely contributed to the injury, and therefore the word "direct" as used in the prayer makes it bad. But to accept this contention would require a holding that the word "direct" is here used in the sense of the word "sole"; thus giving the prayer a meaning not warranted by its language. The plaintiff offered no prayer dealing with his right to recover against the defendants jointly, but, had a proper instruction in this respect been granted, there would have been no inconsistency between it and the prayer here under consideration. *Sline & Sons v. Hooper,* 164 Md. 244, 251, 164 A. 548.

By the city's prayer 3a, the jury were instructed that the duty imposed by law upon the city did not require it to make and keep its public streets in perfect condition and repair, but only that it should use reasonable care and diligence in the exercise of the powers vested in it regarding public streets, and, in determining whether in this case the city had acted with reasonable care and diligence, it was proper for the jury to take into consideration all the surrounding circumstances in evidence before them. While we have recently held that the expression contained in the last part of this prayer was of itself insufficient to cure a prayer otherwise defective (*Balto. & O. R. Co. v. State, use of Carbone,* 169 Md. 345, 181 A. 830), this prayer contains no more than a simple statement that, under the law by which it was created, Baltimore City is not required to make and keep its public streets in perfect condition and repair, but is only re-

quired to use reasonable care and diligence in that regard. In our judgment, the prayer simply and concisely stated a correct principle of law, and one which applied to the situation which the jury had under consideration. The rejection of a somewhat similar prayer in *Harford County Commissioners v. Hamilton*, 60 Md. 340, 343, was not based upon the ground that it presented an incorrect legal proposition, but simply because such an instruction under the facts of that case was unnecessary and inapplicable.

Prayer 3b, granted at the city's request, was as follows: "The Defendant, the Mayor and City Council of Baltimore, prays the Court to instruct the jury that it is not an insurer of the safety of persons traversing its streets, and that its duty is merely to exercise ordinary care to keep its streets in a reasonably safe condition for travel thereon, and no liability attached to it simply because several bricks were below the ordinary level of the street and that thereby the Plaintiff sustained injury, but that the City can only be held liable for negligence in the maintenance of said streets; and before the City can be charged with negligence, (inasmuch as there is no evidence in this case legally sufficient to prove that the City had actual notice of the condition of said street), the jury must find from the evidence that the street was in a dangerous or unsafe condition and had been in such dangerous or unsafe condition for a sufficient length of time to justify the presumption that it did have notice of its said condition in time to have repaired the same prior to the happening of the alleged accident."

This prayer states, but in much more detailed manner, the principle set forth in the preceding instruction, and then informs the jury that there is no proof that the city had actual notice of the street condition; hence, in addition to finding that the street was in an unsafe condition, the jury must further find that such condition had existed sufficiently long in point of time to charge the city with constructive notice. It is argued that the prayer is bad, because containing an instruction that there is no

legally sufficient evidence to prove actual notice on the part of the city, and in support of this argument we are referred to the report of Officer Duffy made more than three months after the accident, mentioning certain holes in the bed of Greenmount Avenue. But, in dealing with the fifth exception, we said that the report was not ad-missible for the purpose of showing a defective condition of the street at the time plaintiff was injured. The ob-jection to this part of the instruction cannot therefore prevail. The other argument against the prayer is to the effect that it is, to the extent to which it instructs the jury that there is no legally sufficient evidence of actual knowledge on the part of the city as to the unsafe condi-tion of the street, in conflict with appellant's first prayer, which was granted. We are of the opinion that, if a special exception had been filed to this prayer upon the ground suggested, it should have been sustained, but ap-pellant cannot complain because no such exception was taken, since his case was thereby placed before the jury in a light more favorable than he was entitled to legally.

What we have said in reference to prayer No. 1 of the city applies equally to its No. 4 prayer, which, before allowing a recovery against the city, required a finding of negligence on its part which was the direct, immediate, and proximate cause of plaintiff's injury. The fifth prayer was the usual burden of proof instruction, while the sixth instructed the jury as to the degree of care and prudence which the plaintiff was bound to exercise for his own safety. It follows from what we have said that the rulings upon the prayers were correct, and no error is found under the sixth exception.

In connection with his motion for a new trial, from the overruling of which the seventh exception was taken, there appears in the record an agreed statement of facts, between appellant's counsel and counsel for the receivers, concerning an incident that took place during the trial of the case and which appellant attempts to use in support of the motion. Mr. Harrison, counsel for the receivers, in making his opening statement, told the jury that a

police officer, who came upon the scene shortly after the accident to the plaintiff, found the latter staggering drunk and in such condition as to be unable to give an intelligent account of his injuries or how they were sustained. The officer to whom he referred was then in court, but it developed that he had made the report upon information furnished by another officer, who at the time of the trial was confined in a sanatorium. Receivers' counsel learned of this when testimony for the plaintiff had been concluded, and at once informed the trial judge, as well as appellant's counsel, stating that he wanted the jury to understand that his opening statement was made in good faith. At the court's suggestion, the officer who made the report was put upon the stand, and at the conclusion of his testimony the court said: "Mr. Harrison just wants to explain his opening statement to the jury, in which he quoted from your report. His report is based on some other case." It is conceded that counsel for receivers in making the remark acted entirely in good faith and, upon discovering his mistake, honestly endeavored to correct it with the court, opposing counsel, and the jury. We confess our inability to understand in what manner plaintiff's case was injured by this incident, yet, if we felt otherwise, we would be powerless to help him, since he then made no objection to continuing the trial. For a party to remain silent under such circumstances until after losing his case before a jury and then for the first time make objection to such procedure and be sustained therein would be alike unfair to courts, litigants, and the public. *Brawner v. Hooper*, 151 Md. 579, 594, 135 A. 420; Code, art. 5, sec. 10.

And, since the action of the trial court in granting or refusing a motion for a new trial is entirely discretionary, no appeal lies therefrom. *Brawner v. Hooper*, supra; *Chiswell v. Nichols*, 139 Md. 442, 115 A. 790; *Hartlove v. E. & H. Bottling Co.*, 160 Md. 507, 153 A. 850. See, also, *Bradley v. Bradley*, 123 Md. 506, 510, 91 A. 685, 687, in which it is said: "Nor will a litigant be permitted to employ a motion for a new trial as a means of

634

bringing to this court for its review any matter occurring during the trial of the case to which objection was not made at the time of its occurrence."

The judgment appealed from will be affirmed, with costs to appellee.

*Judgment affirmed, with costs to appellees.*